Clara Mann JUDISCH,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 83–3238.

United States Court of Appeals,
Eleventh Circuit.

March 20, 1985.

**824**

Michael L. Paup, Richard Farber, Joan I. Oppenheimer, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

Curtis J. Timm, Sarasota, Fla., for plaintiff-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and GARZA *, Senior Circuit Judge.

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. 26 U.S.C. § 6694(a) (1982) provides:
 (a) **Negligent or Intentional Disregard of Rules and Regulations**
 If any part of any understatement of liability with respect to any return ... is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $100 with respect to such return or claim.

2. An "income tax return preparer" is defined by section 7701(a)(36)(A) of the Internal Revenue Code as a person who prepares for compensation, or who employs one or more persons to

TJOFLAT, Circuit Judge:

Section 6694(a) of the Internal Revenue Code, 26 U.S.C. § 6694(a) (1982),[1] imposes a penalty on an income tax preparer[2] who understates a taxpayer's liability on an income tax return by negligently or intentionally disregarding revenue rules and regulations. Section 6694(b) of the Code, 26 U.S.C. § 6694(b) (1982),[3] penalizes a tax preparer who willfully understates a taxpayer's liability on a return. The principal question presented in this appeal is whether a tax preparer can be penalized under section 6694(b) if the understatement of taxpayer liabilities is caused by the tax preparer's willful disregard of revenue rules and regulations.

## I.

Clara Mann Judisch, the appellee here, is a federal income tax return preparer in Sarasota, Florida. She has been preparing income tax returns since 1952, when she began practicing law in Ames, Iowa. Judisch practiced law in Ames until she moved to Sarasota in 1968. Thereafter, she limited her professional work to the preparation of income tax returns.

Most of Judisch's taxpayer clients were individuals; some were sole proprietors of small businesses. Judisch's first step in preparing a client's tax return would be to mail the client a four-page questionnaire. On receipt of the filled-out questionnaire, Judisch would prepare the return and send it to the client for his signature. The client

prepare for compensation, any income tax return. 26 U.S.C. § 7701(a)(36)(A) (1982).

3. 26 U.S.C. § 6694(b) provides:
 (b) **Willful Understatement of Liability**
 If any part of any understatement of liability with respect to any return ... is due to a willful attempt in any manner to understate the liability for a tax by a person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $500 with respect to such return or claim. With respect to any return or claim, the amount of the penalty payable by any person by reason of this subsection shall be reduced by the amount of the penalty paid by such person by reason of [26 U.S.C. § 6694](a).

would then mail the return to the Internal Revenue Service. Usually, Judisch would prepare a client's return without communicating with him except through the questionnaire. In a few instances, she would call the client to inquire about information disclosed in his answers to her questionnaire.

In 1976 Congress amended the Internal Revenue Code, adding section 280A, 26 U.S.C. § 280A (1976),[4] to limit the type of taxpayer eligible to take a "home office" deduction; to be eligible for such a deduction, the taxpayer must use the portion of his residence employed as a "home office" exclusively, and on a regular basis, as his principal place of business or as a place of business used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of business. The amount of the deduction is limited to the gross income derived from the use of the home office. This amendment to the Code was effective for the tax years relevant to this suit, 1976 and 1977, and Judisch had knowledge of this fact.

In mailing her questionnaire to her clients for these two tax years, Judisch did

---

4. 26 U.S.C. § 280A (1976) provides in pertinent part:

§ 280A. Disallowance of certain expenses in connection with business use of home, rental of vacation homes, etc.

(a) General rule.—Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

. . . .

(c) Exceptions for certain business or rental use; limitation on deductions for such use.—

(1) Certain business use.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—

(A) as the taxpayer's principal place of business,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

. . . .

(5) Limitation on deductions.—In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of—

(A) the gross income derived from such use for the taxable year, over

(B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.

S.Rep. No. 95–66, 95th Cong., 1st Sess., at 89–90 (1977), reprinted in 1977 U.S.Code Cong. & Ad.News 185, 265–66, which was widely disseminated throughout the tax field, stated, in commenting on section 280A, that:

Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. Thus, for example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or engage in similar activities, as well [as] for personal purposes, will be denied a deduction for the expenses paid or incurred in connection with the use of the residence which are allocable to these activities.

. . . .

In addition to the exclusive use test, the Act requires that the portion of the residence used for trade or business purposes must be used by the taxpayer on a regular basis in order for the allocable portion of the expenses to be deductible. Expenses attributable to incidental or occasional trade or business use of an exclusive portion of a dwelling unit would not be deductible.

The provision does not permit a deduction for any portion of expenses paid or incurred with respect to the use of a dwelling unit which is used by the taxpayer both as a residence and in connection with income producing activities (sec. 212). For example, no deduction will be allowed if a taxpayer who is not in the trade or business of making investments uses a portion of his residence (exclusively and on a regular basis) to read financial periodicals and reports, clip bond coupons and perform similar activities because the activity is not a trade or business.

not elicit the information necessary to enable her to determine whether a given client was entitled to a home office deduction. Judisch did ask the client to indicate whether a part of his home was "used for production of income," and, if so, the percentage of the home so used, and to list expenditures the client incurred in carrying out such business activity. She did not, however, seek the critical information necessary to determine the client's eligibility for a home office deduction: whether the portion of the client's home used for the production of income was used exclusively, and on a regular basis, for that purpose; whether it was the principal place of the client's trade or business; and the gross income derived therefrom. Nevertheless, Judisch routinely claimed a home office deduction on her clients' 1976 and 1977 income tax returns. She did so even when it was clear that the client either had no earnings from a trade or business or had no home office used exclusively as his principal place of business. Moreover, Judisch claimed as business expenses, items, such as cable television, the home telephone, and the home newspaper, that could not qualify as business expense. She also claimed investment tax credits for property, such as personal property that the client decided to use in his home office, that was ineligible for such a credit. The IRS discovered Judisch's home office deduction practice while auditing some of her clients' tax returns, and, after a full investigation, assessed fifty-eight penalties against her under sections 6694(a) and (b) of the Internal Revenue Code[5] for understating tax liability with respect to tax returns prepared by her for the 1976 and 1977 tax years.

Judisch thereafter brought this action in the district court, as authorized by section 6694(c) of the Internal Revenue Code, 26 U.S.C. § 6694(c) (1982), seeking a determination of her liability for these penalties. She demanded a trial by jury. After the parties joined issue, they agreed, for reasons unimportant to this appeal, to limit the trial of the case to the penalties assessed in connection with five tax returns, Wotring's 1977 return,[6] the Roates' 1976 and 1977 returns, and the Joneses' 1976 and 1977 returns. The parties also agreed that the order of proof at trial would require the government to put on its evidence first.

The government produced the only witnesses called at trial, Judisch and Priscilla A. Quina, the IRS agent who audited Judisch's clients' tax returns. Judisch called no witnesses. All that she presented to the jury was a copy of a 1980 Joint Congressional Resolution, Act of Oct. 1, 1980, Pub.L. No. 96–369, 1980 U.S.Code Cong. & Ad.News (94 Stat.) § 123, which prohibited the IRS from using any funds to enforce the rules or regulations it had promulgated to implement section 280A of the Code relating to "the determination of the principal place of business of the taxpayer."

At the close of all the evidence, Judisch moved for a directed verdict as to the section 6694(b)[7] penalties for willfully understating her clients' tax liability. She contended that a finding of "willfulness" under section 6694(b) required that the tax return preparer purposely disregard "information furnished by the taxpayer" and that the evidence failed to show that she had done so. In response, the government argued that a section 6694(b) penalty for willful understatement of liability may be based on the tax preparer's intentional disregard of applicable rules and regulations and that there was ample evidence for the jury to conclude that Judisch had intentionally disregarded such rules and regulations in preparing the five returns in question. The district court directed a verdict in Judisch's favor as to the section 6694(b) penalties, because, as Judisch contended, the evidence did not demonstrate that she had intentionally disregarded information fur-

---

**5.** See supra notes 1 and 3.

**6.** The district court granted a directed verdict on both penalties assessed in connection with the 1977 Wotring return because Judisch testified that she did not prepare the return. The government does not appeal this ruling. Therefore, the issue is not before us.

**7.** See supra note 3.

nished by the taxpayer. The court also concluded that the evidence was insufficient to sustain the penalties under the government's theory. The court submitted the question of Judisch's liability for the section 6694(a) penalties to the jury, and the jury found for Judisch.

The government appeals, contending that the district court erred as a matter of law in removing the section 6694(b) penalties from the jury. The government also contends that, with respect to the section 6694(a) penalties that were submitted to the jury, the jury's verdict must be set aside, and a new trial ordered, because the court committed prejudicial error in admitting into evidence the 1980 Joint Congressional Resolution concerning the IRS' enforcement of section 280A of the Code. We consider these contentions in turn.[8]

## II.

### A.

### 1.

 The district court directed verdicts as to the section 6694(b) penalties, relying, in part, on the assumption that an income tax preparer's intentional disregard of the Internal Revenue Code or treasury rules and regulations cannot constitute a violation of section 6694(b). The court reasoned that Congress did not intend to proscribe the same conduct in both sections 6694(a) and (b). As to the former, the court reasoned, Congress intended to proscribe the negligent or intentional disregard of the rules and regulations; as to the latter, it intended to proscribe the willful disregard of information furnished by the taxpayer for the purpose of understating the amount of taxes owed. As an alternative holding, the court found the evidence insufficient to

show that Judisch had willfully understated the tax liability on any of the returns before the court.

Section 6694(b), on its face, proscribes "a willful attempt in any manner to understate the [taxpayer's] liability."[9] The willful disregard of rules and regulations for the purpose of understating tax liability constitutes a manner of willful attempt under the section; accordingly, Judisch violated section 6694(b) if she willfully disregarded the Code or treasury rules and regulations to understate tax liability.

A tax return preparer's willful disregard of the tax code or regulations, for the purpose of understating a client's tax liability, violates both sections 6694(a) *and* (b). The text of the latter suggests this result: "the amount of the penalty payable by any person by reason of this [section] shall be reduced by the amount of the penalty paid by such person by reason of [section 6694] (a)." The treasury regulations and the legislative history also support this position. Treas.Reg. § 1.6694–1(b)(2)(iv) (1984) provides as follows:

> In certain situations, a preparer shall be subject both to a penalty under [section 6694] (a) ... for intentional disregard of rules and regulations and to a penalty under [section 6694] (b) for willful understatement of liability. A penalty for willful understatement of liability may be based on an intentional disregard of rules and regulations. For example, a preparer who claims a personal exemption deduction for the taxpayer's mother with knowledge that the taxpayer is not entitled to the deduction will have both intentionally disregarded rules and regulations within the meaning of [section 6694] (a) ... and willfully understated

---

**8.** The government also contends that the district court committed reversible error in refusing to allow the government to call a rebuttal witness. The court stated that the rebuttal witness had not been listed as a witness ahead of time, that she had been sitting in the courtroom during the trial, and that, if it had known she was going to testify, it would have invoked Fed.R.Evid. 615, which allows the court to sequester witnesses so that they cannot hear the testimony of

other witnesses. Whether to sequester the witness was clearly within the sound discretion of the trial court, especially in view of the limited use of the witness' testimony and the lack of prejudice to the government. *United States v. Nash,* 649 F.2d 369, 371 (5th Cir.1981). There was no error.

**9.** *See supra* note 3.

liability for tax within the meaning of [section 6694] (b).[10]

The legislative history directly supports this regulation. H.R.Rep. No. 94–658, 94th Cong. 1st Sess., at 279 (1975), *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3175, states in pertinent part:

> A willful understatement of tax liability can also include an intentional disregard of Internal Revenue Code rules and regulations. For example, an income tax return preparer who deducts all of a taxpayer's medical expenses, intentionally disregarding the percent of adjusted gross income limitation, may have both intentionally disregarded Internal Revenue Code rules and regulations and willfully understated tax liability. In such a case, the Internal Revenue Service can assess either or both penalties against the income tax return preparer.

*See also* S.Rep. No. 94–938, 94th Cong.2d Sess., at 356 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad.News 3439, 3785. In light of the regulations and the legislative history, we conclude that an income tax preparer's willful disregard of the Code or the rules and regulations for the purpose of understating a client's tax liability violates section 6694(b) and section 6694(a) as well.

The district court erred in concluding that Judisch could not have violated both sections 6694(a) and (b). The Congress plainly contemplated that an income tax preparer could transgress both sections simultaneously. Every violation of section (b), based on evidence that the taxpayer willfully disregarded IRS rules and regulations, is also a violation of section (a); a violation of section (a) is a violation of section (b) only where the government proves willfulness.

2.

■ The district court directed a verdict for Judisch on all of the section 6694(b) willfulness penalties on the ground that there was insufficient evidence in the record from which a jury could find that Judisch had intentionally disregarded the applicable rules and regulations. The sufficiency of the evidence presents a nettlesome question on review [11] in this case because of the government's trial strategy. Inexplicably, the government decided not to establish the information Judisch's clients provided her to enable her to prepare the tax returns under scrutiny. That is, the government neither introduced the questionnaires those clients filled out and mailed to Judisch [12] nor called the clients to testify as to the information they provided her. In short, the government did not prove the amount of tax liability understatement that resulted from the home office deduction, and, as to the Wotring return for 1977, the government even failed to establish that Judisch prepared it. *See supra* note 6. A directed verdict with re-

---

**10.** Treasury regulations must be sustained unless unreasonable or plainly inconsistent with the Internal Revenue Code. *National Muffler Dealers Ass'n, Inc. v. United States,* 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979); *Thor Power Tool Co. v. Comm.,* 439 U.S. 522, 533 n. 11, 99 S.Ct. 773, 781 n. 11, 58 L.Ed.2d 785 (1979). Furthermore, the regulation we quote, proposed nine months after sections 6694(a) and (b) became effective, has particular force because it represents a substantially contemporaneous construction by those presumed to have been aware of the congressional intent. *National Muffler Dealers,* 440 U.S. at 477, 99 S.Ct. at 1307; *Comm. v. South Texas Lumber Company,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).

**11.** In ruling on a motion for directed verdict, the district court must consider all the evidence in the case, in the light and with all reasonable inferences most favorable to the party opposed to the motion. A directed verdict should be granted only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). The motion must be denied if there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions...." *Id. See also Federal Kemper Life Assurance Co. v. First Nat. Bank of Birmingham,* 712 F.2d 459, 464 (11th Cir.1983); *Neff v. Kehoe,* 708 F.2d 639, 641–42 (11th Cir. 1983).

**12.** The government did introduce the Joneses' 1976 questionnaire into evidence.

spect to the Wotring return was therefore in order. A directed verdict was also in order as to the Joneses' returns for 1976 and 1977. The government, after auditing those returns, allowed the Joneses' home office deduction. Under these circumstances, it could not be said that Judisch intentionally disregarded the section 280A home office deduction requirements.

The government did manage, however, to present sufficient evidence to withstand a motion for directed verdict with respect to the Roates' 1976 and 1977 tax returns. Judisch admitted that she knew of the requirements for a home office deduction at the time she prepared these returns. She knew, for example, that section 280A(c)(5) of the Code specified that a home office deduction could not exceed the portion of the gross income from the taxpayers' business attributable to business activity in the home office. The Roates had no income from a trade or business, whether conducted out of the home or elsewhere, in 1976 or 1977, and Judisch reported no such income on the Roates' tax returns for those years.[13] Nevertheless, she had the Roates take a home office deduction in both years. These deductions were false for two reasons. First, the Roates had no income from a trade or business against which a home office deduction could be taken. Second, the Roates had no "home office" as defined in section 280A. All they had was a family room where they watched television and listened to the stereo. On these facts, the jury could readily have found that Judisch intentionally disregarded sec-

tion 280A for the purpose of understating the Roates' tax liability for the 1976 and 1977 tax years. The district court therefore erred in directing a verdict with respect to the section 6694(b) penalties on the Roates' returns.

**B.**

The government's second contention in this appeal is that the district court committed reversible error by admitting into evidence the 1980 Joint Congressional Resolution concerning the IRS' enforcement of section 280A of the Code because it was irrelevant. Judisch argues, in response, that the Joint Resolution, passed three years after she prepared the returns in question, demonstrated that Congress disagreed with the IRS position on home office deductions.[14] Judisch contends that the congressional resolution was relevant in her situation, proving her good faith and reasonableness in disregarding the statute and claiming the deductions on behalf of her clients. We are not persuaded.

An income tax preparer's "good faith" and the reasonableness of a position he takes must be judged at the time the work is done. Therefore, only the information available to and considered by the income tax preparer in preparing a tax return is relevant to this good faith issue. It was pure coincidence that the Congress passed the resolution in question two years after the events in issue here. We will not permit a litigant in these circumstances to prove his good faith or a reasonable basis for his action by subsequent developments in the law.

**13.** In the Roates' 1977 return, Judisch did attempt to show that the Roates had earned income from a trade or business by labeling salary income of $5,200, received from their employer, as self-employment income on schedule C. This was patently improper, and Judisch knew it.

**14.** The background of the resolution indicates that Congress was dissatisfied with certain portions of the proposed regulations, not Code section 280A itself. In proposed treasury regulation § 1.280A–2(b) (Aug. 7, 1980), the IRS stated that a taxpayer may have only one principal place of business for purposes of section 280A and that, if the home office is not his principal place of business, no deduction is allowable.

Proposed Treas.Reg. § 1.280A–2(b), 8 Stand. Fed.Tax Rep. (CCH) ¶ 229740 (1981). In late December 1981, Congress passed legislation to allow a taxpayer to have a different principal place of business for each of his separate trades or businesses. Black Lung Benefits Revenue Act of 1981, Pub.L. No. 97–119, 1981 U.S.Code Cong. & Ad.News (95 Stat.) 113. Nevertheless, it declared that the pertinent portion of the dwelling unit must still be exclusively used on a regular basis as the principal situs for some recognized trade or business carried on by the taxpayer, and the amount of the deduction cannot exceed the income from that trade or business.

Judisch argued to the jury that the congressional resolution indicated that the IRS was wrong in challenging the tax returns she prepared on behalf of her clients. As we indicate in the margin, *see supra* note 14, Congress did not intend to approve home office deductions for the vast majority of individual taxpayers who do not operate a trade or business from their residence. Furthermore, several of her clients had no legitimate trade or business income which the Code required to offset the deductions. In this context, the challenged evidence was highly misleading and prejudicial to the jury. In summary, we reverse and remand for a new trial, with respect to the Roates' returns, on the section 6694(a) issue of negligent understatement of liability. *See Perry v. State Farm Fire & Casualty Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984); Fed.R.Evid. 103.

For the foregoing reasons, we reverse the district court's judgment with respect to the section 6694(a) and (b) penalties on the Roates' 1976 and 1977 returns and remand the case for a new trial. In all other respects, the court's judgment is affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED.