**John M. SANSOM, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**PCA 86–04414–RV.**

United States District Court, N.D. Florida, Pensacola Division.

July 5, 1988.

See also, 707 F.Supp. 1296.

James L. Chase, Pensacola, Fla., Steven M. Harris, Miami, Fla., for plaintiff.

Marika Lancaster, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

ORDER GRANTING MOTION FOR COSTS

VINSON, Judge.

The plaintiff brought this action to recover a refund of a penalty imposed for aiding and abetting in the understatement of tax liability. 26 U.S.C. § 6701. The government conceded that the plaintiff was entitled to the refund, and stipulated to an entry of judgment for plaintiff. (Doc. 27)

Now pending is the plaintiff's motion for an award of the costs of litigation, pursuant to Title 26, *United States Code*, Section 7430.[1] (Doc. 29) With respect to this motion, I make the following findings of fact and conclusions of law.

## I. *Facts*

The plaintiff is an "income tax preparer" as defined in Title 26, *United States Code*, Section 7701(a)(36), whose net worth has never exceeded $2,000,000. In the course of his business, he prepared the 1983 income tax returns for Drs. James L. and Mercedes E. Picardi. The plaintiff had represented Dr. James L. Picardi ("Dr. Picardi") since August 1982.

The deadline for filing the Picardis' 1983 return had been extended to October 15, 1984, and the return was mailed on that date. In preparing the return, the plaintiff employed the "income averaging" procedure. The Picardis, therefore, submitted a "Schedule G" with their return, reflecting their taxable incomes for the years 1979 through 1983.

The Internal Revenue Service ("IRS") had previously instituted an audit of the Picardis' 1979, 1980, and 1981 tax returns. As a result of the audit, the Picardis' listed 1979 taxable income of $39,741 was increased to $79,426.85; the 1980 and 1981 returns listing no taxable income were amended to reflect incomes of $17,859.98 and $137,338.47, respectively. No civil or criminal penalty was assessed against the Picardis for the settlement of the years 1979 through 1981.

Subsequently, the Picardis' 1982 and 1983 returns were also audited, and this audit was completed about April 15, 1985. The net result for 1983 was a decrease in taxable income from the filed $156,810.53 to $154,168.10, and an increase in tax liability from $51,710.71 to $60,190.72. Thus, there was an understatement of taxes owed on the 1983 return as filed by the plaintiff.

The audit for the years 1979–1981 was concluded about May 10, 1984. At that time, the Picardis paid $63,471.64, representing payment of taxes due for those years. The funds were transferred to the IRS by Robert D. Hart, the attorney who represented the Picardis during the 1979–1981 audit.

Although the audit of years 1979–1981 had been settled five months earlier, the plaintiff used the originally filed income figures in Schedule G for 1983. The plaintiff had contact with Dr. Picardi during the preparation of the 1983 return, and on such occasions, would ask about the progress of the 1979–1981 audit. However, Dr. Picardi never informed the plaintiff of the conclusion of the audit.

The plaintiff learned of the results of the 1979–1981 audit in the beginning of November 1984. Dr. Picardi asked the plaintiff to represent him on some matters related to the 1982 audit. An IRS official contacted the plaintiff on November 8, 1984, and informed the plaintiff that the 1979–1981 audit was complete. The plaintiff then called Hart, and Hart sent a copy of the settlement papers to the plaintiff on November 12. There is no IRS rule or regulation which imposes a duty on an income tax preparer to investigate the progress of an audit while preparing a return for a subsequent year.

On June 2, 1986, the plaintiff was assessed a penalty of $1,000 for the alleged aiding and abetting in the understatement of tax liability, in violation of Title 26, *United States Code*, Section 6701. Pursuant to Section 6703, the plaintiff paid 15% of the penalty and filed a claim for a refund with the IRS on Form 843. 26 U.S.C. § 6703(c). The IRS received the claim for refund on June 20, 1986.

The plaintiff filed this lawsuit six months later on December 23, 1986, when the IRS did not respond to his claim. *See* 26 U.S.C. § 6703(c)(2). He sought the refund of the $150 paid, plus costs of litigation and attorney's fees. (Doc. 1)

1. The award of attorney's fees in tax litigation commenced after December 31, 1985, is governed by the Tax Reform Act of 1986, Pub.L. 99–514, § 1551, 100 Stat. 2085, 2752. This case was filed on December 23, 1986, and therefore, is governed by the Tax Reform Act.

The government filed a motion to dismiss the claim based on failure to properly serve the defendant. (Doc. 3) This motion was denied as moot. (Doc. 15) The government filed an answer denying the substantive allegations of the complaint. (Doc. 9) The United States denied that it had erroneously assessed the penalty against the plaintiff and that the plaintiff was entitled to recover a refund.

The scheduling order in this case set discovery to end on June 8, 1987. (Doc. 7) Discovery was later extended until August 7, 1987. (Doc. 11) As of June 5, no written discovery had been served on the plaintiff, and no depositions had been taken by either party.

The plaintiff filed a motion for summary judgment on July 24, 1987. (Doc. 20) In response, the government sought more time for discovery. (Doc. 21) And, discovery was extended until September 14, 1987. (Doc. 22) On August 25, 1987, the United States took the depositions of Dr. Picardi, the plaintiff, and attorney Hart. By September 11, 1987, counsel for the defendant informed counsel for the plaintiff that the government would concede the case and not oppose the motion for summary judgment. (Doc. 26) A stipulated entry of judgment was entered on November 17, 1987. (Doc. 27) The judgment was satisfied on December 28, 1987. (Doc. 31)

The plaintiff has been represented in this proceeding by two attorneys. His lead counsel is Steven M. Harris of Miami; and his local counsel is James L. Chase. The plaintiff paid Harris a nonrefundable retainer of $4,500, plus an additional $1,050 for the motion concerning costs. The plaintiff also seeks to recover $1,600 for the fees of Chase, 16 hours at $100 per hour.

The plaintiff has filed a motion for reasonable litigation costs pursuant to Title 26, *United States Code*, Section 7430. (Doc. 29) The government opposes the motion, claiming that its position in this litigation was substantially justified within the meaning of the statute. 26 U.S.C. § 7430(c)(2).

## II. *Discussion*

Title 26, *United States Code*, Section 7430 authorizes an award of "reasonable litigation costs" to the prevailing party in a civil proceeding brought against the United States in district court in connection with the refund of any penalty assessed under the Internal Revenue Code. 26 U.S.C. § 7430(a). In order to be eligible, the party must exhaust his administrative remedies and not unreasonably protract the proceeding. 26 U.S.C. § 7430(b).

This lawsuit was filed against the United States to recover a refund for a penalty imposed on the plaintiff pursuant to Section 6701 of the Internal Revenue Code. Thus, Section 7430 applies to the plaintiff's motion for attorney's fees. The plaintiff first filed a claim for a refund with the IRS pursuant to Section 6703(c). After waiting the required six-month period for agency action, he filed this lawsuit on December 23, 1986. *See* 26 U.S.C. § 6703(c)(2). On July 8, 1987, the plaintiff filed a motion for summary judgment, one month prior to the scheduled end of discovery on August 7, 1987. The parties do not dispute, and I so find, that the plaintiff has exhausted his administrative remedies and has not unreasonably protracted this litigation.

A "prevailing party" within the meaning of Section 7430 is an individual who: (1) establishes that the position of the government was not substantially justified; (2) substantially prevails with respect to the most significant issue or set of issues presented; and (3) does not have a net worth in excess of $2,000,000 at the time the proceeding was initiated. 26 U.S.C. § 7430(c)(2). There is unrebutted evidence in the record that the plaintiff's net worth has never exceeded $2,000,000. The parties agree that the plaintiff has substantially prevailed on the most significant legal issues in this case through the settlement of his claim. Thus, to decide whether the plaintiff is a "prevailing party," I must determine whether the position of the United States in this proceeding was not substantially justified.

Congress made two changes relevant to this inquiry when it amended Section 7430

in the Tax Reform Act of 1986, Pub.L. 99–514, § 1551, 100 Stat. 2085, 2752. Under prior law, the taxpayer had to establish that the position of the United States was "unreasonable." The 1986 amendments changed "unreasonable" to "not substantially justified." This change was intended to conform the language of Section 7430 to the language of the Equal Access to Justice Act (EAJA) [28 U.S.C. § 2412(d)(1)(A) ]. *See* H.Conf.Rep. No. 99–841, 99th Cong., 2d Sess., 1986 *U.S.Code Cong. & Ad.News* 4075, 4889.

Second, the 1986 amendments added a definition for "position of the United States":

The term "position of the United States" includes—

(A) the position taken by the United States in the civil proceeding, and

(B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based.

26 U.S.C. § 7430(c)(4).

Prior to the amendment, the circuits were split whether "civil proceeding" included the position of the United States in administrative action. *See Ewing & Thomas, P.A. v. Heye,* 803 F.2d 613, 615 (11th Cir. 1986). The Eleventh Circuit had held that the position to be examined was the "in-court litigating position" of the United States, to the exclusion of administrative action. *Ewing & Thomas, P.A. v. Heye, supra,* 803 F.2d at 615. Thus, the 1986 amendment overruled controlling precedent in this circuit.

While significant, these changes will have little bearing on my decision in this case. First, several courts had already applied the EAJA standard of "substantially justified" to determine the reasonableness of the government's position under Section 7430. *See United States v. Balanced Financial Mgt. Inc.,* 769 F.2d 1440, 1451 n. 12 (10th Cir.1985); *Giesecke v. United States,* 637 F.Supp. 309 (W.D.Tex.1986); *Kaufman v. Egger,* 584 F.Supp. 872 (D.Me. 1984), *aff'd,* 758 F.2d 1 (1st Cir.1985). Second, the only evidence concerning the position of the United States in the prior administrative proceeding in this case is that the IRS ruled the penalty applied. The parties have not submitted any evidence concerning the IRS file on the plaintiff. Therefore, I must assume that the position of the United States in the administrative proceeding was the same as that taken by the government in this civil action.

■ In order to determine whether the position of the United States was not substantially justified, I must now consider the merits of the claim under the applicable penalty provision. The standard is based on reasonableness; the government's position must have had a reasonable basis in law and in fact. The fact that the government conceded the claim does not establish that its position was not substantially justified. *See, e.g., Ashburn v. United States,* 740 F.2d 843, 850–51 (11th Cir.1984); *White v. United States,* 740 F.2d 836, 839–42 (11th Cir.1984); *Porter v. Heckler,* 780 F.2d 920 (11th Cir.1986); *Mathews v. United States,* 713 F.2d 677 (11th Cir.1983).

Under Section 7430, the claimant must establish that the position of the United States was not substantially justified. 26 U.S.C. § 7430(c)(2)(A)(i). However, the United States bears the burden of proof on the merits of its claim against the income tax preparer for a violation of Section 6701. 26 U.S.C. § 6703(a). Thus, the ultimate question under Section 7430 is whether the government would have been able to support in law and in fact the imposition of the Section 6701 penalty on the plaintiff.

Section 6701 authorizes imposition of a civil penalty of $1,000 for anyone:

(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document in connection with any matter arising under the internal revenue laws,

(2) who knows that such portion will be used in connection with any material matter arising under the internal revenue laws, and

(3) who knows that such portion (if so used) will result in an understatement of the liability for tax of another person.

The penalty may be imposed on one who acts through a subordinate. 26 U.S.C. § 6701(c). The taxpayer need not have knowledge of the understatement. 26 U.S.C. § 6701(d). Thus, in order to establish that the penalty should be imposed, the government has the burden of showing:

FIRST: That the person aided or advised in the preparation of a tax-related document;

SECOND: That the person knew the relevant portion would be used in connection with a material matter relevant to the income tax laws; and

THIRD: That the person knew use of the relevant portion would result in understatement of tax liability for another person.

In this case, there is no dispute that the plaintiff advised the Picardis in the preparation of the Schedule G for their 1983 tax return, and that he knew that Schedule G was a "material matter" in the preparation of the return. The only disputed issue is whether the government could show that the plaintiff knew that use of Schedule G would result in understatement of tax liability for the Picardis.

The government's position in this case was that the plaintiff failed to investigate the results of the audit for the Picardis' 1979 through 1981 returns to determine whether they were eligible for income averaging in 1983. In response to an interrogatory of the plaintiff, the government stated:

It is not the Government's contention, at this stage of its discovery, that the plaintiff knew that the 1983 tax liability of the Picardis would be understated; rather the Government contends that willfulness in such matters does not require fraudulent intent or evil motive. It merely requires a conscious act or omission made in the knowledge that a duty is therefore not being met. (Doc. 20, Ex. C)

The plaintiff, on the other hand, took the position that Section 6701 required a showing that the plaintiff used the figures in Schedule G knowing that the result would be an understatement of tax liability for the Picardis. (Doc. 20)

In essence, whether the position of the government was substantially justified depends on what is the scienter requirement for Section 6701 and whether the government's position was reasonable in relation to this element. This is a case of first impression. I have found only one reported decision interpreting Section 6701, and that court did not discuss the scienter element. *See Kuchan v. United States*, 679 F.Supp. 764 (N.D.Ill.1988).

Section 6701 was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, § 324(a), 96 Stat. 324, 615. The purposes of the section were to permit more effective enforcement of the tax laws by discouraging tax preparers from aiding taxpayers in fraudulent underpayment of taxes, to provide equivalent civil penalties for tax preparers as exist for taxpayers, to provide noncriminal penalty for tax preparers, and to protect taxpayers from tax preparers who would lead them into fraudulent conduct. S.Rep. No. 494, 97th Cong., 2d Sess., 1982 *U.S.Code Cong. & Ad.News* 781, 1022. Thus, the overriding interest in enacting Section 6701 was to deter the filing of fraudulent or false tax returns. *See* Mintz, *Guess Who Uncle Sam Wants Now: An Analysis of the Tax Advisor Aiding & Abetting Penalty*, Taxes, March 1985, 221, at 223–24. However, the statute makes clear that the taxpayer need not have knowledge of the understatement in order for the penalty to apply to the tax preparer. 26 U.S.C. § 6701(d). Also, no return needs to be filed for the penalty to be imposed. *See Kuchan v. United States, supra,* 679 F.Supp. at 768–69.

In enacting Section 6701, Congress sought to fill a gap in the civil penalty provisions in the Internal Revenue Code. As Stated in the House Conference Report:

Present law provides a criminal penalty for willfully aiding in the preparation or presentation of a false or fraudulent return, or other document under the internal revenue laws. [26 U.S.C. § 7206(2)] The penalty is a fine of up to $5,000 or 3

years imprisonment or both, together with costs. There is no comparable civil penalty on persons who aid in the preparation of false or fraudulent documents. Income tax preparers who willfully attempt to understate the liability for tax of any person are subject to a penalty of $500 per return. [26 U.S.C. § 6694(b)] H.Cong.Rep. No. 760, 97th Cong., 2d Sess.1982 *U.S.Code Cong. & Ad.News* 1190, 1348.

Thus, preparation of any fraudulent document or return subjects the tax preparer to criminal liability. 26 U.S.C. § 7206(2). Similarly, the willful attempt to understate tax liability on a return subjects the preparer to civil penalties. 26 U.S.C. § 6694(b). However, preparation of fraudulent documents was not subject to civil penalty. Section 6701 fills this gap.

Despite the obvious relation of Section 6701 to other penalties in the Internal Revenue Code, Congress distinguished Section 6701 by proscribing *"knowing"* conduct, rather than "willful" conduct, as in the other penalty provisions. For example, the criminal penalty requires that the tax preparer "willfully" prepare a fraudulent return or tax-related document. 26 U.S.C. § 7206(2). Under that standard, the government must show a "voluntary, intentional violation of a known legal duty." *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973); *see United States v. Damon*, 676 F.2d 1060, 1063 (5th Cir.1982).

Section 6694 authorizes imposition of civil penalties on income tax preparers. Section 6694(a) imposes a $100 penalty for negligent or intentional disregard of revenue rules and regulations. Negligence for such a penalty is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Marcello v. Commissioner*, 380 F.2d 499, 506 (5th Cir.1967), *cert. denied*, 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968). For example, a tax preparer may be liable under Section 6694(a) if he negligently fails to inquire into information given him by the taxpayer and use of such information results in filing of a return that violates a rule or regulation. *Brockhouse v. United States*, 749 F.2d 1248 (7th Cir.1984).

Section 6694(b) allows a $500 penalty per return for "willful" attempts to understate tax liability with respect to any return or claim for refund. 26 U.S.C. § 6694(b). In this context, "willful" includes filing a return with "falsehoods knowingly perpetrated by the return preparer." *United States v. Ernst & Whinney*, 735 F.2d 1296, 1304 (11th Cir.1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 814 (1985). This includes false factual information and intentional disregard of rules and regulations. *United States v. Ernst & Whinney*, *supra*, 735 F.2d at 1304; *Judisch v. United States*, 755 F.2d 823 (11th Cir.1985). "Willfulness" for Section 6694(b) requires "a conscious act or omission made in the knowledge that a duty is therefore not being met." *Pickering v. United States*, 691 F.2d 853, 855 (8th Cir.1982).

The government's position, then, was that the scienter element of Section 6701 is equivalent to that of the statutes which require "willfulness." I cannot agree. Congress has clearly distinguished the scienter requirement of Section 6701 from that in other statutes, e.g., Section 6694(b) and Section 7206(2).

The plain language of the statute ("knows") indicates that actual knowledge is necessary. The government must establish that the tax preparer "knows" the use of the document will result in understatement of tax liability. I conclude that actual knowledge is a higher standard than the "willfulness" standard utilized in other statutes. Simply put, "know" requires knowledge—awareness of the facts and the ultimate result of the conduct. Under the "willful" standard, courts have allowed proof based either on actual knowledge of the facts or legal standards, or on the basis of a conscious disregard of the facts or legal standards. Congress, however, wrote Section 6701 to require actual knowledge, excluding the "conscious disregard" standard, and there is no evidence in the statute that such a standard should be inferred by this Court.

Requiring actual knowledge is consistent with the legislative purpose of deterring the filing of *fraudulent* tax returns. If the taxpayer need not know that understatement will result, then the fraudulent intent must be found in the tax preparer. Thus, knowledge that an understatement of tax liability will result is a necessary element for imposition of the penalty.

The legislative history also indicates that actual knowledge is necessary. The Senate report points out that there must be "direct involvement" in the preparation of a false or fraudulent document. S.Rep. No. 494, 97th Cong., 2d Sess., 1982 *U.S.Code Cong. & Ad.News* 781, 1022. Also, both the Senate and House reports indicate that Section 6701 is not intended to apply if the tax preparer is subject to the penalty for negligence or intentional disregard of regulations. *See id.* at 1023; H.Conf.Rep. No. 760, 97th Cong.2d Sess., 1982 *U.S.Code Cong. & Ad.News* 1190, 1348; *cf.* 26 U.S.C. § 6701(f)(2).

Congress generally has provided specific scienter requirements in the IRS penalty statutes. As pointed out above, Section 6694 outlines separate penalties for negligent conduct and for willful conduct of tax preparers. Section 6653, imposing penalties on taxpayers, also separately provides for negligent conduct and for willful conduct. Congress proscribed "knowing" conduct in Section 6701, and so, only "knowing" conduct should be penalized.

Furthermore, Congress has provided a gradation in the amount of civil penalties that is obviously dependent upon the scienter requirement. Negligent conduct with respect to preparing or filing tax returns is punishable by modest fines. *See* 26 U.S.C. § 6694(a) ($100 penalty for tax preparers per return); 26 U.S.C. § 6653(a) (penalty for taxpayer of 5% of underpayment per return). Willful conduct is penalized with significantly larger fines. *See* 26 U.S.C. § 6694(b) ($500 per return for tax preparer); 26 U.S.C. § 6653(b) (75% of underpayment for taxpayer per return).

Section 6701 allows a $1,000 penalty upon the preparer per taxpayer per taxable period. The higher penalty is consistent with a higher standard for proof of scienter and the overall statutory scheme of income tax penalties.

■ In sum, it is clear to me that the scienter element of Section 6701 should not be analogized to the statutes punishing "willful" conduct. The plain language of the statute, the legislative history, and the statutory scheme established by Congress indicate that the government must prove actual knowledge that understatement of tax liability will result in order to prove a violation of Section 6701. Thus, I find that the position of the government in this proceeding was incorrect; now I must consider whether it was substantially justified.

■ Of course, the fact that the government misinterpreted the statute would not alone indicate that its position was not substantially justified. It is true, for example, that "willfulness" is normally applied in the criminal sense as imposing a specific intent to violate or ignore the law—a high standard. *See Pattern Jury Instructions, Criminal Cases, Eleventh Circuit* (West 1985). But actual knowledge seems to require more, as I have discussed. The language of the statute is clear, and nothing in the legislative history suggests that the statute should be read otherwise than requiring knowledge that an understatement of tax liability will result. Therefore, I must find that there is no basis in law for the government's position.

Compounding the government's legal error is the failure of the government to come forward with evidence that would support imposition of the penalty in this case under *its* interpretation of the statute. The government apparently imposed the penalty and contested this lawsuit based on the "conscious disregard of a known legal duty" standard. However, in its opposition to the motion for attorney's fees, the government has not even attempted to justify imposition of the penalty under this standard. No rule or regulation has been presented that states a tax preparer has a duty to investigate the results of an audit before preparing the current year's return. In fact, the unrebutted evidence in the record is that there is no such duty. Thus,

even under the government's theory, the record lacks evidence indicating the government's position had a basis in fact.

Furthermore, there is no evidence in the record that the plaintiff even knew that the audits had been completed. In its opposition to the motion for costs, the government recognizes that this was a crucial issue. (Doc. 35, at 7 n. 2) It notes that depositions of the principals revealed no evidence on this issue. (*Id.*)

This concession by the government provides further support for my finding that its position was not substantially justified. First, the government's discovery was apparently directed toward the issue of knowledge. Thus, at least by the time the motion for summary judgment was filed, the government had changed its litigation position to accord with the position of the plaintiff. In so doing, the government in essence conceded that it could not maintain its earlier legal position.

Second, this is the only indication in the government's explanation of what evidence would have supported its position. The statement demonstrates that simply interviewing the principals revealed no factual support for imposition of the penalty. In other words, to the extent indicated in the record, the government imposed this penalty with no factual support. It has now asked me to find that its position was substantially justified throughout the administrative and civil proceedings. This I cannot do, because the record indicates the only reasonable inquiry into whether the penalty applied was made over a year after imposition of the penalty.

Without identifying the factual or legal basis for its position, the government has presented three arguments why its position in this litigation was substantially justified. First, the government claims that its position was not unreasonable because the interpretation of Section 6701 presents a case of first impression. *See United States v. Yoffe*, 775 F.2d 447, 451 (1st Cir.1985); *Baker v. Commissioner of Internal Revenue*, 83 T.C. 822 (1984). I agree, but even in a case of first impression, arguments that are based on questionable assumptions

or are specious need not be considered reasonable. *See Huckaby v. United States Department of Treasury*, 804 F.2d 297, 299 (5th Cir.1986).

As outlined above, the government's position in this case was contrary to the plain language and legislative history of the statute. Furthermore, the government has not attempted to present any justification for its interpretation of Section 6701, or to present facts supporting its position. Under these circumstances, I do not find this argument persuasive.

Second, the government argues that its discovery in this case was reasonable, timely, and narrowly focused on the relevant issue. I might find this argument persuasive if the discovery had been conducted earlier in this litigation. The current state of the record suggests that the government sought discovery post hoc, even though it bore the burden of proof in this case. It has provided no factual basis for contesting the imposition of the penalty throughout the administrative and civil proceedings. It appears that the government took discovery when it realized there was no evidence supporting imposition of the penalty. Under these circumstances, I cannot find that the government's discovery was "reasonable."

Finally, in defense of its position in these proceedings, the government "notes" that the plaintiff failed to avail himself of an opportunity to present his claim to the IRS in January 1987. On January 21, 1987, the district director of the IRS sent the plaintiff's attorney a form letter denying the plaintiff's claim for a refund. The claim was disallowed for the following reason: "You have not established a basis to change our earlier determination." (Doc. 35, Ex. 4) The letter states that the plaintiff may request an Appeals Office conference within 30 days of the date of the letter.

Pursuant to Section 6703, the plaintiff must wait six months after filing a claim for refund before filing a lawsuit. This period gives time for administrative settlement of the claim. The plaintiff waited six months before filing this lawsuit. During

that time, he received no response concerning his claim from the IRS. The plaintiff was not required to pursue administrative action once he filed this lawsuit, and so, his failure to request an appeal has absolutely no bearing on whether the position of the United States in this action was substantially justified.

For the reasons set out above, I find that the position of the United States in this proceeding was not substantially justified. The plaintiff is a "prevailing party" within the meaning of Section 7430. Accordingly, the plaintiff's motion for attorney's fees under Section 7430 is hereby GRANTED, subject to the amount as discussed below.

Under Section 7430, the prevailing party is entitled to "reasonable litigation costs." 26 U.S.C. § 7430(a). Reasonable litigation costs include "reasonable court costs" and "reasonable" attorney's fees. 26 U.S.C. § 7430(c). As the plaintiff is a prevailing party within the meaning of this section, he is entitled to taxable court costs and a reasonable attorney's fee.

The plaintiff has requested fees to recover 37 hours of work by his lead counsel Steven M. Harris at $150.00 per hour, and 16 hours of work by his local counsel James L. Chase at $100.00. The government has not contested the accuracy of the hours requested, but does contest the hourly rates.

As required by the scheduling order (doc. 7), the attorneys in this case have filed time records for work performed. In addition, the plaintiff paid his lead counsel a $4,500 nonrefundable retainer for litigation of the case and an additional $1,050 for the attorney's fee issue. The time records are not as detailed this Court generally requires, and, as the government points out, they do not reflect exactly how the retainer was expended. However, they do provide sufficient record for me to determine that 53 hours of work were performed in the litigation of this proceeding by the two attorneys.

Section 7430 provides that fees shall not be awarded in excess of $75 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate." 26 U.S.C. § 7430(c)(1)(A)(ii)(III). The evidence on the issue of fees presented by plaintiff indicates that the rate of Mr. Harris is in the $200 per hour range and that the rate of Mr. Chase for similar work is $100 per hour. The proffered justification for awarding Mr. Harris the rate of $150 per hour is that he is very highly qualified for this sort of work and that there are no local attorneys with similar qualifications.

I certainly do not doubt the qualifications of Mr. Harris and Mr. Chase. However, I do not find that the circumstances of this case warrant a rate in excess of the statutory rate of $75 per hour. Although the issue presented was one of first impression, the resolution was fairly uncomplicated, and it became apparent early in the proceeding that the government had no case. I find, therefore, that the plaintiff is entitled to recover a reasonable attorney's fee for 53 hours of work at $75 per hour, or $3,975.

Accordingly, the Clerk shall enter a judgment for the plaintiff for taxable court costs and attorney's fees of $3,975.

DONE AND ORDERED.