In re James E. MITCHELL and Diane C. Mitchell, Debtors.

James E. MITCHELL and Diane C. Mitchell, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 87–01176.
Adv. No. A87–06771.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Aug. 10, 1989.

435

Charles S. Kennedy, III, Trial Atty., Office of Special Litigation, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

Ernest A. Bentley, Sherwood, Bentley & Anderson, Bellingham, Wash., for plaintiffs.

## MEMORANDUM OPINION

SAMUEL J. STEINER, Chief Judge.

This matter came before the Court for trial on May 1, 1989. Pursuant to stipulation between the parties, as reflected in the Pre–Trial Order, the issues associated with dischargeability of various tax claims have been resolved. The remaining issues be-fore the Court involve a determination of tax liability under Section 505 of the Bankruptcy Code, 11 U.S.C. § 505, and Sections 6701 and 6707 of the Internal Revenue Code, 26 U.S.C. §§ 6701, 6707.

This Court has jurisdiction pursuant to 28 U.S.C. § 157 and 11 U.S.C. § 505. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (O).

## FACTS

The plaintiff/debtor, Mitchell, commenced this action to avoid penalties assessed against him by the Internal Revenue Service.

Mitchell has a background of tax preparation and of giving financial advice. He began selling tax shelters in 1982. In 1983 or 1984 Mitchell organized his own tax shelter which was a limited partnership known as Cascade Hydro. Mitchell was the general partner. The investors were the limited partners. The purpose of Cascade Hydro was to own, construct and operate two small hydro-electric plants in Whatcom County, Washington, one on Spring Creek and the other on Sygitowicz Creek. The objective was to have Spring Creek in operation in 1984, producing an average of 34 KW per month; and to have Sygitowicz Creek in operation by 1985, producing an average of 150 KW per month.

In December of 1984, Spring Creek was in operation, producing about 10 KW per month. However, it was not connected to public power. Some time in late 1984 or early 1985, Cascade Hydro abandoned Spring Creek and shifted all of its efforts and resources to Sygitowicz Creek. Sygitowicz Creek became operational on December 30, 1986, when it was connected to the public power supply.

In 1985, Cascade Hydro incorporated as a Subchapter S corporation.

Cascade Hydro took deductions and tax credits for 1984, based on Spring Creek, and passed the credits through to thirty two partners. In 1985, Cascade Hydro took deductions and tax credits based on the completion of both plants. As in 1984, the deductions and credits were passed

through to the then thirty four shareholders. As to both years, Mitchell, as the principal party involved, reviewed and signed the Cascade Hydro tax returns and the K–1 forms for the limited partners and/or shareholders which showed their purported shares of the deductions and credits.

Cascade Hydro was never registered as a tax shelter.

The defendant/IRS assessed civil penalties against Mitchell under Sections of the Internal Revenue Code pertaining to individuals who aid and abet the understatement of tax liability (26 U.S.C. § 6701), and who fail to furnish information regarding tax shelters (26 U.S.C. § 6707).

## THE SECTION 6701 PENALTY

*Standard of Proof:*

Sections 6700, 6701, 6702 and 6703 were enacted in the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 324(a), 96 Stat. 324, 611–615. These various provisions of the Internal Revenue Code establish civil penalties to be assessed against persons who promote and sell abusive tax shelters (26 U.S.C. § 6700); who aid and abet the understatement of tax liability (26 U.S.C. § 6701); and who file frivolous income tax returns (26 U.S.C. § 6702).

Section 6703 of the Internal Revenue Code (26 U.S.C. § 6703), places the burden of proof upon the United States on the issue of whether or not a person is liable for the penalties involved in sections 6700, 6701 and 6702. However, the parties disagree as to which standard of proof applies. The defendant maintains that the "preponderance" standard is applicable, while Mitchell argues that the Government must meet the "clear and convincing" standard. Cases have been cited in support of both positions.

The United States has cited two cases from district courts in this circuit. These cases involved penalties assessed under § 6700 and § 6702. In *Franklet v. United States,* 578 F.Supp 1552 (D.N.D. Cal.1984), *aff'd,* 761 F.2d 529 (9th Cir.1985), the district court held the I.R.S. bore the burden of proving by a preponderance of the evidence all factual matters for imposition of a § 6702 penalty for the filing of a frivolous return. In *United States v. H & L Schwartz, Inc., et al.,* 60 AFTR.2d 87–6031 (D.C.Cal.1987), *aff'd sub nom., Bond v. U.S.,* 872 F.2d 898 (9th Cir.1989), the district court held the "preponderance" standard was the proper standard to apply in § 6700 and § 6702 penalty cases.

The plaintiff/debtor argues that the more stringent "clear and convincing" burden of proof should be applied. In support of his position, the debtor cites *Warner v. U.S.,* 700 F.Supp. 532 (D.S.D.Fla.1988). That case discussed the standard of proof for assessment of penalties under § 6701, the same section applicable in the present case. In *Warner, supra,* the district court, ruling upon a Motion in Limine, held that § 6701 imposes the most severe civil penalties which may be imposed against a tax preparer. For that reason, the court ruled that the United States was required to carry its burden of proof by clear and convincing evidence.

This Court adopts the reasoning and conclusions of *Franklet v. United States, supra,* and *United States v. H.L. Schwartz, Inc., et al., supra.* Both cases held that the "preponderance" standard is the proper standard to apply in § 6700 and § 6702 penalty cases. Since § 6701 is governed by the same provisions of § 6703 as §§ 6700 and 6702, and since district and appellate courts in this circuit have determined that the preponderance standard is applicable to cases under § 6700 and § 6702, then the logical analysis is that the preponderance standard should apply to cases under § 6701.

*Knowledge Element of § 6701:*

Section 6701 (26 U.S.C. § 6701(a)), provides:

(a) *Imposition of penalty.*—Any person—

(1) Who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return affidavit, claim, or other document in connection with any matter

arising under the internal revenue laws,

(2) who knows that such portion will be used in connection with any material matter arising under the internal revenue laws, and

(3) who knows that such portion (if so used) will result in an understatement of the liability for tax of another person

shall pay a penalty with respect to each such document in the amount determined under subsection (b).

The parties agree that Mitchell aided or assisted in the preparation and/or presentation of the Cascade Hydro returns for the years 1984 and 1985, and that he knew that the returns would be used in connection with material matters arising under the internal revenue laws. However, the parties disagree as to whether Mitchell "knew" that the returns would result in an understatement of tax liability.

The Government argues that "knowledge" includes not only positive knowledge, but also includes deliberate ignorance, citing *United States v. Jewell*, 532 F.2d 697 (9th Cir.1976), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), and *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585 (9th Cir.1983). However, neither case interpreted the "knowledge" element of § 6701. Mitchell contends that "knowledge" means either the intentional preparation of tax returns with the intent to defraud the United States, or with no regard to the truth or accuracy of the information, citing *Sansom v. U.S.*, 703 F.Supp. 1505 (D.N.D.Fla.1988), 62 AFTR 2d 88–5304, which held that the United States must prove that the taxpayer had actual knowledge of the understatement of tax liability.

The language of § 6701 differs from other statutes which impose penalties on tax preparers. Section 6694(b) imposes a civil penalty for the *willful* attempt to understate tax liability. Section 7206(2) imposes criminal penalties for the *willful* preparation or presentation of fraudulent tax documents. Section 6701, however, does not include the willful language. Rather Section 6701 requires that the tax preparer "know" that the tax is understated.

The legislative history establishes that Congress intentionally drafted different statutory language. The Senate reports establishes that the tax preparer must have "direct involvement" in the preparation of a false or fraudulent document. S.Rep. No. 494, 97th Cong., 2d Sess., 1982 U.S. Code Cong. & Ad.News 1190, 1348. *Mertens Law of Fed Income Tax* § 56.26 at 107–108 (1988). *Sansom v. U.S.*, 703 F.Supp. 1505, 1511 (D.N.D.Fla.1988). Further, the legislative history of Section 6701 indicated that it is not to apply in cases of negligence or intentional disregard. S.Rep. No. 494, 97th Cong.,2d Sess., 1982 U.S. Code Cong. & Ad.News 1190, 1348; H.Conf.Rep. No. 760, 97th Cong.2d Sess., 1982 U.S.Code Cong. & Ad.News 1190, 1348; *Sansom, supra,* at 1511.

Accordingly, this Court concludes that the Section 6701 penalties are applicable in this case only if Mitchell knew or had actual knowledge of the understatement of tax liability.

*Placed in Service:*

The extent of Mitchell's knowledge is dependent to a great extent on the definition of "placed in service" set forth in Treasury Regulation 1.46–3(d) which provides:

(d) *Placed in service.* (1) For purposes of the credit allowed by Section 38, property shall be considered placed in service in the earlier of the taxable years:

(ii) The taxable year in which the property is placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity.

Four factors have been developed to determine whether an electric generating property has been "placed in service". Those factors include: (1) The necessary permits and licenses have been approved; (2) critical tests for various components have been satisfactorily completed; (3) synchronization with the grid system has been

achieved; and (4) the unit has gone into ordinary daily operation. Rev.Rul. 76–256, 1976–2, C.B. 46; Rev.Rul. 76–428, 1976–2 C.B. 47; Rev.Rul. 78–203, 1978–2 C.B. 81. The most important of the four factor appears to be (4), that the unit has gone into ordinary daily operation. It is clear, however, that the electrical generating property need not be working at its intended or rated capacity. Rev.Rul. 79–78, 1979–1 C.B. 103; Re.Rul. 84–85, 1984–1 C.B. 10.

Mitchell argues that in 1984 and 1985, there was little authority on the definition of "placed in service"; that he consulted with C.P.A.'s, lawyers and others in the field as to the meaning of placed in service, that he relied on such advice, that therefore did not know that there had been an understatement of tax liability. Mitchell has cited *Judisch v. United States*, 755 F.2d 823 (11th Cir.1985), which seemingly holds that there is a "good faith" defense which can mitigate against penalties assessable for negligent or intentional understatement of tax liability. The court held that a preparer's good faith and the reasonableness of a position taken must be judged at the time the work is done.

On the other hand, the IRS argues that the two plants were so incomplete that they were not "placed in service"; that Mitchell was aware of the situation but took the deductions and credits anyway; and therefore the penalties were properly imposed.

*Conclusion—Mitchell's Knowledge:*

■ This Court concludes that the IRS has proven by preponderance of the evidence, if not by the clear and convincing standard, that Mitchell had actual knowledge at all pertinent times that the two projects had not been placed in service, and therefore the penalties were properly assessed.

As to Spring Creek, the evidence is clear that by December of 1984, the facility was in operation. However, it was producing only 10 KW per month, which was approximately enough power to operate a hair dryer; and that it had not been connected to the public power supply. These facts are not sufficient to satisfy the "ordinary daily operation" requirement of Rev.Rul. 76–256. Notwithstanding his knowledge that Spring Creek produced a diminimus supply of power in 1984, Mitchell with full knowledge of the facts signed the 1985 return after the Spring Creek project had been abandoned.

As to Sygitowicz Creek, the evidence is more compelling. Deductions were taken in the 1985 return, which was signed by Mitchell, notwithstanding the fact that the project was not complete, was not in operation, and was not then connected to the public power supply. In short, it was obvious that the project was not "placed in service" during 1985.

## AMOUNT OF SECTION 6701 PENALTY

■ As framed in the pre-trial order, this issue appears to relate only to the 1985 returns.

Section 6701(b) provides:

(b) *Amount of penalty.—*

(1) *In general.*—Except as provided in paragraph (2), the amount of the penalty imposed by subsection (a) shall be $1,000.

(2) *Corporations.*—If the return, affidavit, claim, or other document relates to the tax liability of a corporation, the amount of the penalty imposed by subsection (a) shall be $10,000.

The IRS argues that the appropriate penalty for 1985 is $1,000 per return of the thirty four individual shareholders of Cascade Hydro. On the other hand, Mitchell contends that if a penalty is assessed, it should be $10,000.

Neither party has cited any case law on this issue. The IRS contends that while Cascade Hydro was a corporation, it was a Subchapter S corporation which means that all of the deductions and credits reflected on the corporate returns pass through to the individual shareholders. Therefore, the IRS argues that not only was the corporate tax liability understated, but the thirty four individual shareholders' tax liability was understated as well.

Mitchell's response is that the return was for a corporation and therefore, if a penalty

is assessable, it should be the penalty provided for in § 6701(b)(2), that is $10,000.

Because of the "direct involvement" required of § 6701, Mitchell should not be assessed a $1,000 penalty for the returns of the individual shareholders. Mitchell was only involved in the preparation of the corporate return. There was no evidence that he prepared the returns of the individual shareholders. Accordingly, the penalty should be $10,000.

## SECTION 6707 PENALTY

*Registration of Tax Shelter:*

Section 6707 provides:

§ 6707. *Failure to furnish information regarding tax shelters*

(a) *Failure to register tax shelter.—*

(1) *Imposition of penalty.*—If a person who is required to register a tax shelter under section 6111(a)

(A) fails to register such a tax shelter on or before the date described in section 6111(a)(1) ...

such person shall pay a penalty with respect to such registration in the amount determined under paragraph (2). No penalty shall be imposed under the preceding sentence with respect to any failure which is due to reasonable cause.

(2) *Amount of penalty.*—The penalty imposed under paragraph (1) with respect to any tax shelter shall be an amount equal to the greater of—

(A) 1 percent of the aggregate amount invested in such tax shelter, or

(B) $500.

The parties have stipulated that Cascade Hydro was not registered as a tax shelter. Accordingly, the IRS assessed penalties. In addition, the parties have stipulated that the total amount invested in Cascade Hydro in 1984 was $238,529 and that the total amount invested in 1985 was $141,811. Based on these stipulated figures, the amounts of the § 6707 penalties are $2,385.39 for 1984 and $1,411.81 for 1985.

[6] Section 6703 creates special rules for penalties assessed pursuant to §§ 6700–6702. Section 6703 provides that the burden of proof is upon the United States.

There is no similar provision related to the penalties assessed pursuant to § 6707. Therefore, the United States is entitled to a presumption that the assessment is correct. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). The presumption arises once it is supported by a minimal evidentiary foundation. *Weimerskirch v. Commissioner,* 596 F.2d 358 (9th Cir.1979). The burden of proof then shifts to the taxpayer to rebut the presumption by proving that the assessment was arbitrary or erroneous. *United States v. Stonehill,* 702 F.2d 1288 (9th Cir.1983).

█ In order to determine whether the § 6707 penalty assessment was arbitrary or erroneous, the court must review the provisions of § 6111 which provides:

§ 6111. *Registration of tax shelters*

(a) *Registration.—*

(1) *In general.*—Any tax shelter organizer shall register the tax shelter with the Secretary (in such form and in such manner as the Secretary may prescribe) not later than the day on which the first offering for sale of interests in such tax shelter occurs.

A tax shelter is defined in Section 6111(c). Generally, a "tax shelter" is any investment where the ratio of deductions and tax credits over the amount of actual cash or property which is invested exceeds two to one for each investor. Section 6111(c)(1)(B)(iii) requires that the investment must be a substantial investment. "Substantial investment" is defined in § 6111(c)(4) as an investment where the aggregate amount which may be offered for sale exceeds $250,000 and in which there are expected to be five or more investors.

Mitchell does not contest the ratio determination. The only element which he does contest is the "substantial investment" element of § 6111(c)(4). Mitchell's position is that the test is not met because the statute was enacted in 1984 and became effective on August 24, 1984. He contends that the $250,000 amount should be applied only to actual sales offered after the effective date of the statute; and after the effective date, actual sales did not exceed $250,000.

Therefore, according to Mitchell, the tax shelter need not have been registered.

Mitchell's argument is, in fact, partially supported by the law and regulations. The IRS issued temporary regulations which were approved on August 10, 1984. Treas. Reg. § 301.6111–1T provided a series of questions and answers to assist in determining whether a tax shelter needed to be registered. The regulation provides in part:

> *A–60.* The determination of whether an investment is a substantial investment will be made by taking into account *only the interests that are offered for sale on or after September 1, 1984.* An investment will be considered a substantial investment if there are expected to be 5 or more investors on or after September 1, 1984, and the aggregate amount offered for sale *on or after September 1, 1984, is expected to exceed $250,000.* Amounts received from the sale of interests before September 1, 1984, however, *are taken into account in computing the amount of the penalty for failure to register.* (emphasis added).

After the effective date of the regulation, there were more than five investors in Cascade Hydro. The evidence also establishes that after the effective date, actual sales did not exceed $250,000. Actual sales after the effective date of the statute, however, are not the test. Pursuant to the regulation, the test for substantial investment is whether the aggregate amount offered for sale on or after September 1, 1984, *is expected to exceed $250,000.*

According to the evidence, Cascade Hydro needed cash of $660,000. As of September 1, 1984, less than $250,000 had been invested. Accordingly, it would appear that sale of more than $250,000 were expected.

Based on the foregoing analysis, the tax shelter should have been registered. Accordingly, Mitchell has not sustained his burden of rebutting the presumption as to the correctness of the penalty assessment.

*Responsibility for Registration:*

▇ Mitchell argues that even if the tax shelter needed to be registered, he was not the party responsible for registration. The primary responsibility for registering a tax shelter rests with the tax shelter organizer. A tax shelter organizer is defined in § 6111(d)(1). The definition is very broad and includes the person principally responsible for organizing the tax shelter, § 6111(d)(1)(A); any other person who participated in the organization, § 6111(d)(1)(B); and any person participating in the sale or management of the investment at a time when the tax shelter was not registered, § 6111(d)(1)(C).

The evidence clearly shows that Mitchell had the responsibility for registering Cascade Hydro as a tax shelter. Mitchell signed Purchase Order Deposit & Receipt Agreements related to the projects as Jim Mitchell, Representative. A brochure related to the Hydro Group, dated September 6, 1984, was written on the stationery of Mitchell Financial Services. Mitchell was the promoter and organizer of the Cascade Hydro and was elected its president in 1985.

The assessment of penalties against Mitchell, as the tax shelter organizer, was proper.

## AMOUNT OF SECTION 6707 PENALTIES

The amount of penalty assessed pursuant to § 6707 is set for the § 6707(a)(2), which provides a penalty in the amount of one percent of the aggregate amount invested in the tax shelter, or $500, whichever is greater  The parties have stipulated that the total amount invested in Cascade Hydro in 1984 was $238,539 and the amount invest in 1985 was $141,811. Based on these figures, the amounts of the § 6707 penalties are $2,385.39 for 1984 and $1,411.81 for 1985.

## CONCLUSION

1. As to penalties under Section 6703, the burden of proving liability is on the United States. The standard of proof is by a preponderance of the evidence.

2. Mitchell knew or had actual knowledge that neither hydro electric project had

 

been placed in service either in 1984 or 1985.

3. The proper amount of the Section 6701 penalty for 1985 is $10,000.

4. Cascade Hydro should have been registered as a tax shelter. Mitchell was the party responsible for the registration. Accordingly, the penalties assessed against Mitchell under Section 6707 in the sum of $2,385.39 for 1984 and in the amount of $1,411.81 for 1985 are proper.

5. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this opinion shall serve as the Court's Findings of Fact and Conclusions of Law.

6. Counsel for the defendant shall prepare and present for entry an appropriate Judgment.