Donnell R. MATTINGLY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 90–1538.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1990.

Decided Feb. 1, 1991.

Rehearing and Rehearing En Banc
Denied March 13, 1991.

Edward M. Roth, St. Louis, Mo., for appellant.

Janet Kay Jones, Washington, D.C., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and CONMY,* Chief District Judge.

* The Honorable Patrick A. Conmy, Chief Judge, United States District Court, District of North Dakota, sitting by designation.

HENLEY, Senior Circuit Judge.

This appeal arises from a jury verdict rendered in federal district court[1] resulting in the assessment of $54,000.00 in tax penalties against appellant under 26 U.S.C. § 6701 (the Internal Revenue Code, or I.R.C.) for supplying valuation overstatements in connection with tax returns which claimed illegitimate investment tax credits.[2] The issues before us are ones of first impression regarding questions of (1) whether the government's evidentiary burden of proof under § 6701 is by a preponderance of the evidence, (2) whether and to what extent a "willful blindness" jury instruction is permissible where the statute requires knowledge, and (3) whether a § 6701 penalty may be imposed both on original and carryover year returns of the same taxpayer for related understatements.[3]

For reasons to be stated, we hold that (1) the burden is on the government to prove its case by a preponderance of the evidence under § 6701, (2) actual knowledge through direct involvement is required by § 6701 and the willful blindness instruction given in this case, while imperfect, caused harmless, if any, error, and (3) on these facts, the government may not impose a $1,000 per return penalty on carryover returns. Therefore, the judgment of the district court is affirmed in part and reversed in part.

BACKGROUND

Appellant was a tax preparer who sold master recording audiotape and videotape tax shelters to his clients. In a typical transaction, an investor leased a tape or tapes from a corporate or partnership lessor, and the lessor "passed through" investment tax credit pursuant to an I.R.C. § 38 election, usually in an amount greater than the total lease payments. The investment tax credit passed through was sometimes based on the master recording's appraised value, as opposed to its cost or basis, since many were original creations. At other times, the investment tax credit was based on a sales price agreed to by a friendly or related buyer and seller, with payment made principally in the form of long-term, unsecured or undersecured promissory notes. The IRS determined the tapes in question were greatly overvalued. As a result, the tax credits were in large part disallowed.[4]

This appeal concerns only the jury's determination that appellant is liable for penalties attributable to 1983 tax year understatements. The district court determined that the penalty was assessable not only for the forty-six 1983 tax returns prepared by appellant, but also for the eight carryover returns he prepared claiming credits which originated in 1983. *Mattingly,* 1989 WL at 165582, *3.

The language of § 6701(a) at issue in this case states:

Any person

(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document in connection with any matter arising under the internal revenue laws,

1. The Honorable John F. Nangle, Senior District Judge, United States District Court for the Eastern District of Missouri.

2. The district court issued a pre-trial memorandum opinion disposing of cross-motions for partial summary judgment. The court determined that the proffered evidence was legally sufficient to show that defendant had provided gross valuation overstatements, on which penalty assessment could be based. *Mattingly v. United States,* 722 F.Supp. 568 (E.D.Mo.1989).

3. In a second pre-trial opinion the court determined that, subject to the jury's verdict, the § 6701 penalty could be assessed against Mattingly not only for all 1982 and 1983 returns at issue, but for all related carryover returns.

*Mattingly v. United States,* 90–1 U.S. Tax Cas. (CCH) ¶ 50,012, 1989 WL 165582 (E.D.Mo.1989).

4. For further discussion of the specifics of shelters promoted by Mattingly, *see Gates v. United States,* 874 F.2d 584 (8th Cir.1989) (knowledge not necessary under § 6700 when supplying valuation overstatement); *United States v. H & L Schwartz, Inc.,* 60 A.F.T.R.2d (P–H) ¶ 87–6031, 87–2 U.S. Tax Cas. (CCH) ¶ 9643, 88–1 U.S. Tax Cas. (CCH) ¶ 9176, 1987 WL 45223 (C.D.Cal. 1987) (injunction action to prevent further sales of shelter); *Apperson v. Commissioner,* Tax Ct. Mem. Dec. (CCH) 1987–571 (1987), *aff'd,* 908 F.2d 975 (7th Cir.1990) (appellate opinion text in Westlaw) (taxpayer had no profit motive and invested solely for tax benefits).

(2) who knows that such portion will be used in connection with any material matter arising under the internal revenue laws, and

(3) who knows that such portion (if so used) will result in an understatement of the liability of another person,

shall pay a penalty with respect to each such document in the amount determined under subsection (b).

Subsequent to the enactment of this section, there was a 1989 amendment to § 6701(a)(2) which relaxed the knowledge requirement to "knows (or has reason to believe)...."

The parties do not appear to be aware of any circuit court opinions, or district court opinions in our circuit, that address the issues before us and we have found none. Therefore, we treat these issues as questions of first impression.

BURDEN OF PROOF

■ The burden of proof in a tax case depends greatly on the type of case. While a criminal tax prosecution places the traditional "beyond a reasonable doubt" burden of proof on the government, a civil tax deficiency case generally places the burden of proof on the taxpayer to disprove by a preponderance of the evidence the government's assessment which is otherwise presumed correct. *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Hinckley v. Commissioner*, 410 F.2d 937 (8th Cir.1969).

Between these extremes are civil tax violations penalizing conduct ranging from "willful neglect" to fraud. The standard of proof in these cases is usually a preponderance of the evidence, and by statute the burden of proof is often placed on the government. *See, e.g.,* I.R.C. § 6703 (applicable burden on government in actions brought under §§ 6700–02); *Franklet v. United States*, 578 F.Supp. 1552 (N.D.Cal. 1984), *aff'd*, 761 F.2d 529 (9th Cir.1985) (government burden of proof by a preponderance of the evidence in § 6702 actions); *H & L Schwartz, Inc., supra, aff'd sub nom., Bond v. United States*, 872 F.2d 898 (9th Cir.1989) (government burden of proof by a preponderance of the evidence in §§ 6700, 6702 actions).

■ The major exception to the preponderance standard is for civil tax fraud cases. The burden in such cases is on the government to prove "fraud with the intent to evade tax" by clear and convincing evidence. I.R.C. § 7454(a); *Rechtzigel v. Commissioner*, 703 F.2d 1063, 1064 n. 2 (8th Cir.1983); *Menefee v. United States*, 77–1 U.S. Tax Cas. (CCH) ¶ 9413, 1977 WL 1142, *8 (E.D.Mo.1977).

■ Appellant argues that § 6701 "sounds in fraud" and should be judged by the more strict clear and convincing evidence standard. We have found only two cases to date that have discussed the burden of proof issue in a § 6701 context, and the two courts came to opposite conclusions. *Warner v. United States*, 700 F.Supp. 532 (S.D.Fla.1988) (legislature intended that the government be held to a stringent level of proof, namely false or fraudulent document standard, which is clear and convincing evidence standard); *In re Mitchell*, 109 B.R. 434 (Bankr.W.D. Wash.1989), *aff'd*, 66 A.F.T.R.2d (P–H) ¶ 90–5890, 90–2 U.S. Tax Cas. (CCH) ¶ 50,495, 1990 WL 142016 (W.D.Wash.1990) (preponderance standard is proper and logical standard to apply because Ninth Circuit decisions apply that standard to § 6700 and § 6702 cases in accordance with § 6703).

We find the reasoning of *Mitchell* more persuasive and hold that in actions brought under § 6701 the burden of proof is on the government by a preponderance of the evidence. This holding is based on our view of the statutory language, the integrated enactment of §§ 6700–03 and the overall structure of the civil tax penalty provisions.

A. Statutory Language

As stated, absent fraud with the intent to evade tax pursuant to § 7454(a), a preponderance standard is applicable in civil tax cases. Section 6701 requires proof of aiding or abetting with respect to a tax document, knowledge such document may be used in a material matter under the inter-

nal revenue laws, and knowledge an understatement of another's tax liability will result if so used. I.R.C. § 6701(a)(1)–(3) (1983). The section in question does not require proof of fraud and does not refer to the evasion of tax. Thus, § 7454(a) reasoning is not directly applicable.

This treatment is consistent with the standard of proof used in the § 6700 (tax shelter promoter) and § 6702 (frivolous return filer) cases we mentioned earlier. While § 6700 requires fraud in the context of furnishing a false or fraudulent statement, it is not fraud with the intent to evade tax but rather fraudulent representations in the promotion of a tax shelter to a taxpayer. This distinction, apparently one of the proximity of the fraud to a filing with the government, appears to be of importance in the civil tax penalty structure. We discuss the civil penalty structure more later but, in short, it appears that the more egregious the violative act and the less "distance" between the violative act and formal representations made to or actions taken towards the government, the more severe the penalty. Thus, in the tax code an aider or abettor is punished less harshly than a taxpayer for equivalent conduct, and omissions are generally punished less severely than affirmative acts.

Prior to § 6701 there was no civil penalty to punish aiding and abetting conduct. A related criminal penalty was in existence, however, which appellant suggests provides support for his position that § 6701 sounds in fraud. A person can be imprisoned and fined for willfully aiding or assisting in a material falsity or fraud with respect to a document under or in connection with the internal revenue laws. I.R.C. § 7206(2). Contrary to appellant's contention, the language of this section is clearly distinguishable from § 6701 in that § 7206 requires willful conduct, explicit fraud, and a more direct connection or proximity to a tax document being presented to the government.

B. Integrated Enactment of §§ 6700–03

Aside from the statutory language, we believe the integrated enactment of §§ 6700–03 suggests application of a uniform standard of proof. These provisions were enacted together as part of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 324, 96 Stat. 324. Section 6703 provides that in actions brought under §§ 6700–02 the burden of proof as to whether a person is liable for a penalty "shall be on the Secretary." I.R.C. § 6703(a). The statute does not state the level of that burden of proof nor does it suggest multi-tiered standards.

In connection with § 6701, it appears that Congress specifically intended to create a provision to penalize aiding and abetting conduct similar to that conduct punished under § 7206. S.Conf.Rep. No. 530, 97th Cong., 2d Sess. 266, 275, *reprinted in* 1982 U.S.Code Cong. & Admin. News 781, 1014, 1021. Despite this intention, the statute enacted does not seem to create a civil penalty "similar" to the criminal violation. Absent from the language of § 6701 are the terms "fraud" and "intent to evade tax." Also absent is the potential level of penalty found, for example, in a civil tax fraud provision like § 6662 where the penalty can be up to 75% of the understatement.

Appellant points to language in the Senate report which states:

No person will be subject to this penalty unless that person is directly involved in aiding or assisting in the preparation or presentation of a false or fraudulent document under the tax laws, or directly procures a subordinate to do any act punishable under this provision.

*Id.* at 276, *reprinted* 1982 U.S.Code Cong. & Admin.News at 1022. Taken alone, this passage may suggest that fraud is an element of § 6701. However, the fraud element does not appear in the enacted language and, in any event, it is not the "fraud with intent to evade tax" required before using a more strict standard of proof, but fraud more akin to that in § 6700. Furthermore, when considered in the context of the surrounding fifteen pages of legislative history in the Senate report, and another six pages in the House report, H.Conf.Rep. No. 760, 97th Cong., 2d

Sess. 572–78, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1344–50, we believe the reference to fraud pales in comparison to the overall emphasis on non-fraudulent conduct.

Neither the courts nor the parties suggest any question about the propriety of using the preponderance standard with respect to § 6700 and § 6702. The legislative history of § 6703 also states that:

> [i]n any proceeding involving the issue of whether any taxpayer is liable for the tax shelter promoter penalty, the civil aiding or assisting penalty, or the frivolous return penalty, the *burden* is on the Secretary to prove the conduct giving rise to the penalty.

(Emphasis added.) *Id.* at 271, *reprinted* 1982 U.S.Code Cong. & Admin.News at 1018. The plain language of § 6703, the legislative history, and the simultaneous enactment of these sections persuade us that the provisions should be governed by a uniform standard of proof.

### C. Civil Penalty Structure

In a similar vein, not only does the structure of §§ 6700–03 support a uniform preponderance standard, but the overall civil penalty structure applicable to taxpayers and tax preparers suggests that § 6701 is just another piece in the expansive non-fraud penalty scheme. To illustrate, we look at several provisions of the tax code, violations of which, unless otherwise stated, are subject to proof by a preponderance of the evidence.

Section 6651 imposes a delinquency penalty on willful negligence or lateness in the filing or payment of tax. I.R.C. § 6651(a)(2). The penalty ranges from a minimum of $100.00 up to a maximum of 5% per month of the payment due, up to five months. Former § 6653(a) imposed an underpayment penalty of 5% if at least some part of the underpayment was due to negligence or intentional disregard of the tax rules or regulations. I.R.C. § 6653(a) (1989). Former § 6661 imposed a penalty for substantial understatement of tax, subject to certain exceptions, in the amount of 10% of the underpayment. I.R.C. § 6661 (1989). These penalties have since been replaced by § 6662 which imposes a single 20% penalty on underpayments due to negligence, intentional disregard, or a substantial understatement. I.R.C. § 6662(a)–(b) (1990).

Tax return preparer penalties range from $250 to $1000 for positions taken in a tax return depending on whether the position is unrealistic, or whether due to a willful attempt to understate a taxpayer's liability or reckless or intentional disregard of the tax rules and regulations. I.R.C. § 6694(a)–(b). Other penalties starting as low as $50.00 are also imposed for various compliance failures. I.R.C. § 6695. The § 6701 penalty of $1,000.00 may be imposed on preparers. In contrast, § 6663(a) imposes a civil tax fraud penalty of 75% for underpayments due to fraud. I.R.C. § 6663(a).

What this structure appears to demonstrate is that, as a taxpayer's or tax preparer's conduct becomes more culpable and relates more directly to a tax filing, payment or disclosure under the internal revenue laws, the civil penalty increases. The civil tax fraud penalty is 75%, and subject to a clear and convincing standard of proof, whereas the non-fraud penalties discussed were $100.00, 5%, up to 20% for taxpayers and from $250.00 to $1,000.00 for preparers. Considering the gradation of civil penalties, we believe that § 6701 is properly grouped with the non-fraud civil tax penalties and thus subject to a lower standard of proof.

We believe our decision today is consistent with Supreme Court authority on allocating the burden of proof. Civil suits and administrative proceedings generally require proof by a preponderance of the evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387–88, 103 S.Ct. 683, 689–90, 74 L.Ed.2d 548 (1982) (implied private action for civil fraud under § 10(b) of the Exchange Act may be proven by a preponderance of the evidence). A different standard may be used if reason exists to reallocate the burdens between the parties. *Id.* at 389, 103 S.Ct. at 691.

Thus, we have required proof by clear and convincing evidence where particu-

larly important individual interests or rights are at stake [including termination of parental rights, involuntary commitment proceedings, and deportation] (citations omitted).... By contrast, imposition of even severe civil sanctions that do not implicate such interests has been permitted after proof by a preponderance of the evidence.... Any other standard expresses a preference for one side's interests.

*Id.* at 389–90, 103 S.Ct. at 691. In light of *Huddleston,* the conduct covered by § 6701 does not persuade us to adopt a higher standard of proof.

Contrary to our decision here, one court has reached the conclusion that a clear and convincing standard of proof should be applied in § 6701 cases. *Warner,* 700 F.Supp. at 533 (the court relied on its own legislative history analysis in *Warner v. United States,* 698 F.Supp. 877, 882 (S.D. Fla.1988), and on civil fraud precedent established by *Korecky v. Commissioner,* 781 F.2d 1566 (11th Cir.1986)). We believe the *Warner* court's reliances are misplaced.

Even if we agree that the statute is unclear, thus leading to an examination of the legislative history, the absence of fraud or tax evasion language in the statute is not unclear. The *Warner* court relies on the legislative history to create language which was not enacted. The *Warner* court queried: "[i]f the preparer *knows* that use of the tax document will result in an understatement of tax liability, must not the document be false or fraudulent?" *Warner,* 698 F.Supp. at 882 (emphasis in original). It being difficult to imagine the many situations to which this statute might apply, perhaps a better query is: if Congress had meant fraud, would it not have said so? Furthermore, we maintain that it is "fraud with intent to evade tax" that must be proven before a higher standard is applied. Neither element is found in the enacted language.

## JURY INSTRUCTIONS

■ Appellant next argues that actual knowledge, not willful blindness, is required by § 6701, and that the jury instruc-

tions given in this case improperly permitted willful blindness to substitute for actual knowledge in finding appellant liable for penalties. The following jury instructions were given:

A person's knowledge or a state of mind can rarely be proven directly. Therefore direct proof of Donnell Mattingly's knowledge is not necessary. Knowledge may be inferred from circumstantial evidence such as the conduct of Mr. Mattingly, and such an inference as may arise from the combination of acts or statements, even though an act or statement standing alone may seem unimportant.... In sum, ... knowledge is a question of fact ... you may look to all the evidence adduced at this trial.... In order to prevail in this case, the United States must show by a preponderance of the evidence that Donnell Mattingly knew at the time he prepared the tax returns and other documents in question that the values ... were overstated on those documents.... If he did know those values were overstated, (he) is liable for the penalty with respect to each document.... In determining whether (he) knew ... you should consider all the facts and circumstances brought out in the course of this trial. A jury can infer that a person knew something when that person deliberately closed his eyes to what would otherwise have been obvious to him.... Stated another way, a person's knowledge may be inferred from willful blindness to the existence of fact.... It is entirely up to you as to whether you find any deliberate closing of the eyes and the inferences to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

Section 6701 requires that the actor have certain knowledge. The questions we must answer regard what type of knowledge is required and whether the quoted instruction properly advised the jury on that requirement.

## A. Actual Knowledge

On the first question, we believe actual knowledge, as opposed to the less stringent willful blindness, is required. Some cases have been brought to our attention which support this conclusion, and we are aware of none which directly disputes it. *Sansom v. United States*, 703 F.Supp. 1505 (N.D.Fla.1988) (taxpayer motion for attorney's fees granted because Internal Revenue Service brought action against taxpayer having no evidence that taxpayer had the knowledge required by § 6701); *Warner*, 698 F.Supp. at 882; *Mitchell*, 109 B.R. at 436–37.

These decisions generally compare the "knows" requirement of § 6701 to the "willful" requirement in other civil tax preparer penalty provisions. They also consider the legislative history. Sections 6694(b) and 7206(2) require willful understatement or willful assistance, respectively, before imposing liability. The fact Congress chose to use "knows" as opposed to a lesser form of mental state commonly used in other provisions leads us to believe a distinction was intended. A subsequent amendment to § 6701(a)(2), "(or has reason to believe)," further supports our reasoning.

The legislative history indicates Congress intended that the actor be directly involved in aiding or abetting an understatement before liability is imposed. S.Conf.Rep. at 276, *reprinted* 1982 U.S. Code Cong. & Admin.News at 1022. We believe the direct involvement requirement, in combination with Congress' choice of language, suggests an actual knowledge jury instruction is most appropriate.

## B. Willful Blindness

In opposition to our conclusion here, appellee correctly points out that prior decisions of our court have permitted a willful blindness instruction where specific intent is required by the statute. *United States v. Zimmerman*, 832 F.2d 454 (8th Cir.1987) (in criminal prosecution under I.R.C. § 7206(2) evidence of willfulness proved beyond a reasonable doubt is sufficient to convict); *United States v. Massa*, 740 F.2d 629 (8th Cir.1984) (in brokerage fraud case requiring proof of specific intent, willful blindness instruction was appropriate). We believe appellee somewhat misstates the rule of these cases and that the decisions are otherwise distinguishable.

Section 7206(2) at issue in *Zimmerman* requires willful assistance in the commission of direct tax fraud. In that context evidence of willfulness and a jury instruction on willfulness is properly before the jury. In contrast, § 6701 at issue in the present case does not contain the willful language or the fraud language, but instead contains the term "knows".

In *Massa*, our court approved a willful blindness jury instruction for use in a criminal action brought against employees of the Stix & Co. brokerage firm for various acts of fraud requiring the formulation of specific intent. The jury instruction issue was addressed solely with respect to a fraud conspiracy charge. Massa argued that the jury had to be instructed that it must find Massa had actual knowledge of the details of the securities fraud to be found guilty of all counts. *Massa*, 740 F.2d at 642. Our court correctly held: "[t]he jury could find Massa was a knowing participant in the Stix fraud without finding he knew exactly how [his coconspirator] withdrew money from the firm." *Id.* The court thus differentiated between knowledge of the conspiracy and knowledge of specific underlying facts. At no point did the *Massa* court hold that when actual knowledge is required, something less can be substituted for it.

In the case before us the statute requires that appellant assist in the creation of a tax document, know the use of the tax document, and know such document will understate another's tax liability. This differs from the facts of *Massa* because § 6701 requires that the actor perform certain specified acts and know certain specified facts.

Notwithstanding this conclusion, the willful blindness instruction still plays a role when knowledge is required, but as a mechanism for inference, not as a substitute for knowledge. The *Massa* instruction

was much like the willful blindness part of the instructions we quoted. As the *Massa* court declared, and we reaffirm today; the element of knowledge may be inferred from deliberate acts amounting to willful blindness to the existence of fact or acts constituting conscious purpose to avoid enlightenment. *Id.* at 642–43. Having said this, we need now decide whether, as appellant claims, the jury instructions given at his trial allowed willful blindness to go beyond an inference of, and act as a substitute for, knowledge.

### C. No Error, Harmless Error

 The jury instructions we quoted state that the government must prove "Mattingly knew." Unfortunately, that statement is buried between a discussion of circumstantial evidence and inferences. In *Massa,* the court stated correctly that instructions must be construed as a whole. *Id.* at 643. Reviewing the instructions on the whole, we find that, while imperfect in that they could more clearly emphasize the importance of finding specific intent, the instructions do not authorize the substitution of willful blindness for the element of knowledge as appellant contends. Furthermore, we believe that even if the jury was mistaken about the role of willful blindness, the record indicates that the jury was presented with sufficient evidence of actual knowledge to find appellant liable, thus making any error harmless. Fed.R.Civ.P. 61; *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509 (8th Cir.1984); *Hallberg v. Brasher,* 679 F.2d 751 (8th Cir.1982).

We will not summarize all relevant evidence here, but we will mention a few significant examples. First, the numerous written, telephonic, and in-person contacts between appellant and the Internal Revenue Service during 1983 alerted and informed appellant of problems with the tape valuations and tax credits. The Internal Revenue Service obtained independent appraisals of the tapes establishing a much lower valuation, uncovered evidence demonstrating the illegitimacy of the tape transactions between the tape program lessor and its affiliates, and initiated steps to enjoin sales of the shelter and disallow credits claimed. The Service communicated this and other information to appellant. A jury could have found the communications sufficient to give appellant knowledge that the tax return positions taken in 1982 understated tax liability.

Appellant also established a separate business, allegedly to promote, sell and distribute tapes for his investor clients. To be eligible for the § 38 investment tax credit, appellant's clients had to use the tapes in a trade or business and operate the business with a profit motive. The record shows that neither appellant nor his clients had any experience in this line of business, and appellant's efforts to market the tapes were nominal, especially when considered in light of the efforts necessary to achieve the targeted sales on which valuation and tax credits were based. Most of his clients relied totally on appellant's marketing efforts and tape sales to meet their business and profit motive requirements. There is no probative evidence of any genuine efforts by appellant to meet the business and profit motive requirements of the statute and to establish eligibility for the tax credits. There was no evidence of tape sales during 1983 of 1982 tapes and no probative evidence that appellant had any prospects for future sales of 1982 or 1983 tapes.

Even so, appellant sold additional shelters and again claimed credits in investors' 1983 tax returns. Apparently the jury relied heavily on the facts we have stated in returning a verdict finding no liability in 1982 (before contact by the IRS, and before information on sales of the 1982 tapes was available), but finding liability in 1983, where all other evidence between the years was essentially the same.

### PENALTIES

 The final issue before us concerns the Internal Revenue Service's imposition of § 6701 penalties on 1983 returns and related carryover (both carryforward and carryback) returns. We review such interpretations of administering agencies with great deference, but our obligation is to follow the purpose of the statute as evidenced by its language and history, resolv-

ing ambiguities in penalty statutes in favor of lenity. *Gates,* 874 F.2d at 586 (citations omitted). The district court determined the penalties could be assessed on carryover returns. *Mattingly,* 1989 WL 165582. In this case, we disagree.

Section 6701(b) in relevant part states: (3) *Only 1 Penalty per person per period.*—If any person is subject to a penalty under subsection (a) with respect to any document relating to any taxpayer for any taxable period (or where there is no taxable period, any taxable event) such person shall not be subject to a penalty under subsection (a) with respect to any other document relating to such taxpayer for such taxable period (or event).

The provision clearly states that separate penalties may be imposed for violations involving different taxpayers in the same year. It is also clear that separate penalties may not be imposed for multiple documents in the same year involving the same taxpayer. What is not clear is whether the "relating to" language quoted applies only to "such taxpayer" or "such taxpayer for such taxable period (or event)."

Because the plain language is unclear, we turn to the legislative history. Unfortunately, it is not pellucid.

The penalty, however, can be imposed only once *for any taxable period (or event)* with respect to the taxpayer's actions in assisting any one person. Thus, someone who assists two individuals in preparing false documents would be liable for a $2,000 penalty whereas the penalty would be only $1,000 if he had advised in the preparation of two false documents for the same taxpayer.

(Emphasis added.) S.Conf.Rep. at 276, *reprinted* 1982 U.S.Code Cong. & Admin. News at 1023. The reference to "for any taxable period (or event)" and the cited example we believe leave doubt as to the limits of penalty imposition.

In addition to the district court here, one other trial court has construed this provision. *Emanuel v. United States,* 705 F.Supp. 434 (N.D.Ill.1989). Construing §§ 6700–01, and relying on the legislative history we quoted, the *Emanuel* court con-

cluded, with respect to separate penalties on carryover returns, that "[b]ecause the documents in issue here 'relate to' the year ended December 31, 1982, the government improperly computed the Section 6701 penalty." *Id.* at 438.

The district court in the present case agreed that "additional penalties cannot 'relate to' the same period for which an individual has already been penalized with respect to a given taxpayer ...," but disagreed with the *Emanuel* court that carryover returns relate to the original year. *Mattingly,* at *2. "[D]ocuments claiming tax credits for years prior to and subsequent to the original tax return 'relate to' the tax period for which [the carryover] tax credits are claimed." *Id.* We find the two stated propositions of the district court unsupported by the statute or its history. There is simply no clear indication as to the scope of the "relating to" language.

Apparently both district courts assumed that the "relating to" language applied to the whole clause at the end of § 6701(b)(3), but still reached different results. In such situations, we must resolve ambiguities in favor of lenity and decide the issue before us narrowly. *Gates,* 874 F.2d at 586.

Therefore, we hold that when a § 6701 penalty is imposed with respect to an understatement document in one tax period, another penalty may not be imposed on a carryover document of the same taxpayer, based on the same original understatement.

We affirm the finding of liability for penalties in 1983, but reverse as to the $8,000.00 in penalties imposed for carryover returns.