**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ONE 1989 JEEP WAGONEER,
V.I.N. 1J4GS5874KP105300,
Defendant–Appellant,**

**Ponderosa of Blue Earth County, Inc.,
doing business as Ponderosa Landfill,
a Minnesota corporation, Claimant.**

**No. 91–2764.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1992.

Decided Oct. 9, 1992.

David A. Singer, Minneapolis, Minn., argued (Michael Singer, on the brief), for defendant-appellant.

Mary Jo Madigan, Minneapolis, Minn., argued, for plaintiff-appellee.

Before MCMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Ponderosa of Blue Earth County, Inc., appeals from an order granting summary judgment in a forfeiture action against a Jeep Wagoneer it owned. The district court held that Ponderosa had failed to establish by a preponderance of the evidence that it was an innocent owner of the Jeep within the meaning of 21 U.S.C. § 881(a)(4)(C) (West Supp.1992), after the United States had established probable cause for the forfeiture, and accordingly, summary judgment was appropriate. *United States v. One 1989 Jeep Wagoneer*, No. 3–90–82 (D.Minn. May 29, 1991). On appeal, Ponderosa argues that its controlling owners had no knowledge that the vehicle was in any way connected to drug use, that they did not consent to its use in criminal activity, and that they took reasonable steps to monitor the activities of the employee who used the car. We reverse the district court's judgment and remand for further proceedings in conformity with this opinion.

Mark Weimart is the son of the deceased majority owner of Ponderosa, Gerald Weimart. Lucille Weimart, Mark's mother, is now the majority owner, and Mark and his brother, Steve, are minority shareholders. Mark worked at Kato Sanitation, a separate corporation also owned by the Weimarts, from 1984 to 1989. Mark Weimart became addicted to drugs in 1983 or 1984, and received in-patient treatment for drug

addiction in 1984, 1986, 1987, and again in 1988. The businesses did not discipline Mark Weimart for drug use until his arrest. After living at a halfway house and working elsewhere, Mark Weimart resumed employment with Kato in late 1989 or early 1990. His attendance at Alcoholics Anonymous meetings was monitored by others in the business, according to Steve Weimart. From 1985 through 1989, Mark Weimart drove a vehicle owned by Ponderosa for both business and personal use. When Ponderosa purchased the Jeep Wagoneer on February 1, 1989, Mark Weimart selected it as his company car. Mark Weimart also had access to a personal family vehicle in addition to the jeep. In 1991, Mark Weimart pleaded guilty to distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988). He admitted in a deposition that he used the Jeep Wagoneer to facilitate a drug transaction by transporting cocaine in it.

The government brought this forfeiture action against the Jeep. The district court entered summary judgment for the government, stating that Ponderosa "failed to establish by a preponderance of the evidence that it is an innocent owner within the meaning of 21 U.S.C. § 881(a)(4)(C)." Slip op. at 1.

■ Ponderosa does not contest that the Jeep Wagoneer was used to facilitate the transportation and sale of a controlled substance in violation of 21 U.S.C. § 881(a)(4) (nor, under the record before us, could it successfully do so). Therefore, Ponderosa bears the burden of proving a defense by a preponderance of the evidence. *United States v. 3639 2nd St., N.E.,* 869 F.2d 1093, 1095 (8th Cir.1989); *One Blue 1977 AMC Jeep CJ–5 v. United States,* 783 F.2d 759, 761 (8th Cir.1986).

Ponderosa's only defense is that it was an innocent owner under 21 U.S.C. § 881(a)(4)(C). The statute enumerates three bases for this defense: knowledge, consent, or willful blindness of the owner.[1] The thrust of the government's argument is that: (1) Ponderosa does not dispute that it knew of Weimart's drug habit, (2) it made no showing that it made any attempt to prevent Mark Weimart from using the Jeep Wagoneer for drug transactions, and (3) Ponderosa therefore cannot prove absence of willful blindness.

■ The government's argument clearly has its genesis in the constitutional limits established in *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), which has nothing to do with the "willful blindness" language at issue here. In *Calero–Toledo,* the Court stated in dicta that a constitutional defense to forfeiture might be available to "an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." *Id.* at 689–90, 94 S.Ct. at 2095 (footnote omitted). This circuit relied on *Calero–Toledo* to establish the limits of the constitutional innocent owner defense. *See United States v. One 1976 Cessna Model 210L Aircraft,* 890 F.2d 77, 80–82 (8th Cir. 1989); *United States v. One 1973 Buick Riviera Automobile,* 560 F.2d 897, 900–01 (8th Cir.1977).

In 1988, Congress amended the drug forfeiture statute, 21 U.S.C. § 881, to extend the "innocent owner" defense to owners of

---

1. There is a division in the circuits as to whether a claimant need prove only one or all three of these bases to establish the innocent owner defense. At least two circuits considering a related section containing only the knowledge and consent factors have held the terms to be disjunctive. *Cf. United States v. 6109 Grubb Road,* 886 F.2d 618, 623–26 (3d Cir.1989); *United States v. 141st Street Corp.,* 911 F.2d 870, 877–80 (2d Cir.1990), *cert. denied,* ___ U.S. ___, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991), and

*United States v. Lot 111–B,* 902 F.2d 1443, 1445 (9th Cir.1990).

We need not decide whether the claimant must prove both knowledge and consent, since in this case the government concedes Ponderosa lacked knowledge and does not raise an issue as to consent. The only question is whether there was willful blindness. We believe that the concept of willful blindness presupposes the absence of knowledge and consent.

aircraft, vehicles, and vessels.[2] The relevant section now provides:

> No conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted *without the knowledge, consent, or willful blindness of the owner.*

21 U.S.C. § 881(a)(4)(C) (emphasis added). This statutory language, not the *Calero-Toledo* constitutional doctrine, is at issue in this case.

The statute does not define willful blindness. The government in its brief has cited no cases that deal with the willful blindness language. The government argues that in *One 1976 Cessna Model 210L Aircraft,* 890 F.2d at 80–82, this court required a reasonable attempt by the claimant to prevent the property's unlawful use to satisfy the absence-of-willful-blindness standard. But even a hasty reading of *One Cessna* reveals that it applies the *Calero-Toledo* standard and not section 881(a)(4)(C) and its willful blindness provision.

We have discussed "willful blindness" in other contexts. In *Mattingly v. United States,* 924 F.2d 785 (8th Cir.1991), a civil tax fraud case, we considered whether a willful blindness instruction could satisfy a statutory requirement of knowledge. We stated that willful blindness can be "a mechanism for inference [of knowledge], not ... a substitute for knowledge." 924 F.2d at 791. We stated that knowledge may be inferred when a person deliberately closes his eyes to the existence of facts that would otherwise be obvious or demonstrates a conscious purpose to avoid enlightenment. *Id.* at 792; *see also United States v. Jewell,* 532 F.2d 697, 700–04 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit,* § 7.04 (1990) (deliberate ignorance).

The *Mattingly* definition is consistent with Congress' intent in amending the drug forfeiture statute to add "willful blindness" to the "innocent owner" defense. The innocent owner amendment to section 881(a)(4) was introduced in the House of Representatives without the terms "willful blindness," and only required the owner to establish his lack of "knowledge or consent." 134 Cong.Rec. 22,653, 22,672. During debate, some representatives complained that the original bill "would lead to a 'look-the-other way' defense," 134 Cong. Rec. 24,086 (statement of Rep. Archer), and that "owners will be encouraged ... to know as little about their property as possible...." *Id.* (statement of Rep. Gibbons). The bill was later amended to include the "willful blindness" language. 134 Cong. Rec. at 33,193.

Rep. Jones described the new provision as "virtually identical to the existing defenses [in 21 U.S.C. § 881(a)(6) and (a)(7)] ... except that the concept of willful blindness is incorporated. *This is intended to prevent the owner of a conveyance from closing his eyes to a violation.* I believe that these provisions will provide significant legal rights for the innocent, but still ensure that the guilty will still be punished." 134 Cong.Rec. 33,313 (emphasis added). "Willful blindness addresses the cases of individuals who have demonstrated a conscious purpose to avoid the truth." 134 Cong.Rec. 33,288 (statement of Rep. Young); *see also* 134 Cong.Rec. 33,315 (statement of Rep. Davis). While there are comments in the debates that raise questions and even demonstrate misunderstandings about the meaning of the term, we believe the passages above illustrate the concept of "willful blindness."

Thus, *Mattingly* and the legislative history make clear that willful blindness involves an owner who deliberately closes his eyes to what otherwise would have been obvious and whose acts or omissions show a conscious purpose to avoid knowing the truth. This standard is a way of inferring knowledge, whereas the *Calero-Toledo* standard is more nearly a negligence stan-

---

**2.** 21 U.S.C. § 881(a)(6) and (a)(7) define innocent owner defenses with respect to real estate and other property, but these subsections refer only to acts or omissions committed without the knowledge or consent of the owner.

dard. *See One Cessna 210L Aircraft,* 890 F.2d at 81.

 The case was decided on summary judgment on a record consisting not only of Mark Weimart's deposition but also the depositions of Steve Weimart, his brother, who supervised his work, and Lucille Weimart, Mark Weimart's mother, who was active in the management of Ponderosa. In reviewing a grant of summary judgment, we must view the facts in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 623 (8th Cir. 1981). Where mental state or intent (particularly willfulness) is at issue, summary judgment must be granted with caution, as usually such issues raise questions for determination by a factfinder. *Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 205 (2d Cir.1989); *Simpson v. United States,* 652 F.2d 831, 834 (9th Cir.1981).

The record before the court in this case demonstrates that Mark Weimart had had difficulty with drugs over a period of time and had been treated in 1984, and again in 1986, 1987, and 1988, and finally allowed to return to work at the end of 1989 because the family felt that he was no longer using drugs. Ponderosa presented evidence that the family members were monitoring Mark Weimart's work and had knowledge that he was regularly showing up for work and performing his work. Further, the record demonstrates Mark Weimart had a personal car in addition to the Jeep Wagoneer. This record may raise an issue or an inference as to willful blindness, but it does not demonstrate as a matter of law that Ponderosa consciously chose to ignore information that would have otherwise indicated that Mark Weimart was using the Jeep Wagoneer for drug transactions.

We are satisfied that under the record before us, the question of whether Ponderosa was willfully blind is an issue of fact. The case must be remanded to the district court for trial of this issue.