**Donald D. BAILEY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. CIV 95–267 TUC RMB.**

United States District Court,
D. Arizona.

April 11, 1996.

Scott M. Baker, Offices of Scott MacMillan Baker, P.C., Tucson, AZ, for Donald D. Bailey.

Donald D. Bailey, Tucson, AZ, pro se.

Sean McElenney, U.S. Dept. of Justice, Tax Division, Washington, DC, for U.S.

## ORDER

BILBY, District Judge.

The Plaintiff, a tax preparer, filed suit seeking return of civil penalties assessed against him by the Internal Revenue Service (IRS). Both parties now move for summary judgment. The Court finds that the Defendant is entitled to judgment as a matter of law, and herein grants the Defendant's motion and denies the Plaintiff's motion.

## BACKGROUND

The Plaintiff is a Certified Public Accountant who prepared the tax returns for then husband and wife James and Susan Pierce in 1991 and 1992. He also performed certain accounting services for Duke's Video Movies Etc., a closely-held corporation in which the Pierces had an ownership interest.

The Plaintiff amended the Pierce's 1987 1040X,[1] to reflect an income reduction in the amount of $102,440 and a resulting tax liability reduction of $19,458. The Plaintiff again amended the Pierce's 1987 1040X, decreasing their taxable income by $82,992, resulting in a loss carried back to 1985 and 1986.

---

**1.** Lawrence Dembrowski prepared the original 1987 1040X for the Pierces and the original 1120S for Duke's Video Movie Etc.

The amended 1040X took into account the Pierce's percentage of ownership in the video store. The amended Form K–1 attached to the amended 1040X claimed that the Pierce's share of the video store's $158,000 loss was $94,800. The Pierces claimed this as their flow through loss based upon sixty percent ownership in the video store. The Plaintiff later filed another amended Form K–1 in January 1994 indicating that the Pierces owned eighty percent of the video store, and claiming losses of $176,020.

The Plaintiff states, and Ms. Pierce avers in her affidavit, that at the time the amended 1040X was filed in January 1992, she and her husband owned eighty percent of Duke's Video Movies Etc. The Plaintiff admits that he made a mistake in the Pierce's percentage of ownership, but contends that he underestimated it by claiming only a sixty percent ownership interest, rather than eighty percent. The government contends that the Pierce's owned forty percent interest, as reflected in the original K–1. The Plaintiff admits in his affidavit that the Pierces had informed him that in 1987 they owned forty percent and acquired another twenty percent in 1988 and an additional twenty percent in 1989.

The amended 1986 1040X prepared by the Plaintiff in 1991 claimed a refund of $8107. The amended 1987 1040X prepared by the Plaintiff in 1992 claimed a refund of $6078.

The Plaintiff also amended the 1987 1120S [2] of Duke's Video Movies Etc., resulting in a $174,555 adjustment. He states that he did so in order to account for removal of movies from inventory and depreciation of the movies. The amended 1987 1120S also charged an additional $183,379 to depreciation, using the income forecast method. The Pierces had told the Plaintiff that the life of the movies (time of purchase to time of no demand) is about thirty to forty-five days. Using a ninety percent and ten percent to write off for all movies in 1987 and to adjust the costs for 1984–1986, the Plaintiff arrived at the depreciation charge of $183,379. As a result of these flow through losses, the

Pierces claimed refunds on their amended 1040 forms.

The Plaintiff filed a Form 941C for each quarter of 1987 in order to amend the video store's employment tax returns. The amendments reclassified the $102,440 wages paid to the Pierces as repayment of loans. The United States then refunded to the video store $37,143.29. The IRS disallowed the Pierce's amended 1040X because it was filed in January 1992, more than three years after the due date of the return. The IRS also penalized the Plaintiff $10,000, pursuant to 26 U.S.C. § 6701, for aiding and abetting the understatement of the Pierce's individual federal income tax for the 1987 tax year.

## DISCUSSION

■ A motion for summary judgment is granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When a motion for summary judgment is supported by affidavits or other admissible evidence, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). *See also Celotex Corp v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(e). Summary judgment is appropriate where there is not sufficient evidence to support a jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Both parties submit

**2.** Upon such election, a closely-held corporation may be treated as a conduit, allowing the income, deductions, gains, losses and credits of the S corporation to flow through to the shareholders. 26 U.S.C. §§ 1361–1379. The subchapter S type corporation files a 1120S return, reporting how the transactions are allocated among the shareholders. Each shareholder then reports accordingly on their individual returns.

that there are no questions of material fact and that each is entitled to judgment as a matter of law.

In support of his motion, and in opposition to the Defendant's motion, the Plaintiff raises four arguments. (1) § 6701 cannot be used to penalize where the basis is an untimely filed return; (2) § 6701 cannot be used to penalize where there is no understatement of tax liability; (3) § 6701 cannot be used to penalize where the amended 1120S was accurate; and (4) § 6701 cannot be used to penalize where the alleged aider and abetter did not know that an understatement would result. These arguments are not persuasive.

■ The amended 1987 return was not timely filed in accordance with IRC § 6511. In fact, that was the reason the IRS disallowed the return. This, the Plaintiff argues, means that § 6701 penalties may not be applied to the conduct surrounding the amended 1987 return because that return was precluded by § 6511(a). The Plaintiff interprets the language of § 6701 to require that the return be one which can be used. This interpretation is not supported by any authority or a plain reading of the provision.

Section 6701(a) provides that

Any person—

    (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,

    (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and

    (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person,

shall pay a penalty with respect to each such document in the amount determined under subsection (b).

26 U.S.C. § 6701(a).

The language "if so used" indicates that it need not be used. The focus is on the intent of the aider and abetter, not on how or if the return is put to use. Therefore, it is irrelevant that the return was disallowed because it was untimely. The Plaintiff has provided no authority to support his interpretation of § 6701 and the Court has found none. The

case cited by the Plaintiff, *Golletz v. United States,* No. 90 C 5666, 1991 WL 66371 (N.D.Ill. Apr. 19, 1991), supports a contrary interpretation, as it indicates that imposition of a penalty under § 6701 is appropriate even if a return was never filed. A return which is not filed cannot be used. Thus, there is no requirement that the return be capable of use.

■ Section 6701 does require that the document, if used, result in an understatement of tax liability. 26 U.S.C. § 6701(a)(3). The Plaintiff contends that the IRS has charged him with understating the Pierce's tax liability only on the second amended 1040X. The Plaintiff posits that because the second amended 1040X was adjusting the first amended 1040X which indicated no tax liability, the second amended 1040X could not have understated tax liability. In other words, the first amended 1040X showed zero tax liability. The second amended 1040X could not have understated zero. Where there is no tax liability, it is impossible to understate tax liability.

This reasoning ignores the ability of the taxpayer to carry back and carry forward losses. The amended 1040X further decreased the Pierce's taxable income by more than $80,000. This larger loss in 1987 could be carried into later years to offset future income and reduce tax liability. This results in the understatement of tax liability.

The Plaintiff also claims that there was no understatement of liability because he properly indicated on the amended 1040X that the Pierce's owned eighty percent of Dukes Video Movies Etc. He states that at the time he filed the amended return in 1992, the Pierces did own eighty percent. In addition to the forty percent the Pierce's previously owned (and as reflected on the original K–1), the Pierces acquired forty percent in 1988 and 1989, raising their total ownership interest to eighty percent in 1989.

The relevant time period is 1987. The purpose of the amendment is to accurately reflect the taxpayer's for that tax year. The time of filing the amendment is immaterial to the status for the tax year at issue. The Pierce's ownership in the relevant period of 1987 was forty percent. Thus, by indicating

sixty percent and then eighty percent ownership, the Plaintiff increased the flow through losses and understated the Pierce's tax liability.

■ The Plaintiff, a CPA with over twenty years experience, next argues that the amended 1120S was correct because he used the income forecast method approved by the IRS. He contends that he properly reduced the inventory and depreciated the videocassettes. Even assuming that his calculations were based upon the correct accounting method, the fact remains that the Plaintiff understated the Pierce's liability by incorrectly indicating their ownership interest. The claiming of sixty and eight percent ownership improperly increased the video stores losses that flowed through to the Pierces.

■ The Plaintiff's final argument is that there is no evidence that he knew that an understatement would result. He suggests that his reliance on and belief of information supplied by the Pierces demonstrates that there is no way he could known that an understatement would occur.

This suggestion is belied by the Plaintiff's own statements. He knew that the Pierce's did not acquire an ownership interest above their original forty percent until 1988 and 1989. Ms. Pierce told him so and he so stated under oath. The Plaintiff also knew, and so stated in his deposition, that improper use of the income forecast method would result in an understatement of the Pierce's income. He knew the tracking requirements of using the income forecast methods, but instead relied upon the Pierce's opinions. He did so realizing that "documentation for income forecast method is pretty hard to track. You have to track each movie by serial number and then as that thing goes out and is rented, you get a trail of income, and then after a while, it will die, you know. That's the best way to document it. It's literally almost an impossible task." (Deposition of Donald Bailey at 43–44). Yet he knew that the Pierces were not properly tracking the movies. The Plaintiff stated that the Pierces did not track sales and adopted the income forecast method solely upon their opinion. (*Id.* at 46). Despite his knowledge that he did not have the required tracking, he employed the income forecast method. Despite his knowledge that the Pierces owned only forty percent of Duke's Video in 1987, (*Id.* at 11), he indicated on the amended forms sixty and then eight percent ownership.

At oral argument, the Plaintiff cited *Warner v. United States,* 726 F.Supp. 1287 (S.D.Fla.1989), to support his position that his reliance on information supplied by the taxpayers was at most a mistake resulting in an incorrect document. The Plaintiff argued that liability under § 6701 requires fraud. A mere mistake is insufficient to satisfy the scienter element. In *Warner,* the Southern District of Florida court stated that "the scienter element of § 6701(a)(3) requires the government to show that the Plaintiff was directly involved in aiding or assisting in the preparation or presentation of a false or fraudulent document under the tax laws or directly procured a subordinate to do so." 726 F.Supp. at 1289. The court went on to say that the government must prove "that Plaintiff knew that any portion of the Kelley's and/or VHB's tax returns would result in that understatement of liability of tax, *thereby* causing the document to be false or fraudulent." *Id.* (emphasis added). "[I]f the Plaintiff knew that portions of the tax returns as prepared and presented would result in the understatement of tax liability, those portions of the returns must necessarily be false and fraudulent." *Id.* at 1291. "Although a false or fraudulent document may also be incorrect, the court does not believe that the reverse argument holds true in this context. Incorrect can mean something less than false or fraudulent, such a negligence. Fraud implies intentional wrongdoing and bad faith." *Id.* (citations omitted).

The facts in *Warner* are quite similar to this case. The Plaintiff prepared the individual returns for a couple (the Kelleys) and for their closely held corporation (VHB). Following an audit, certain deductions were disallowed and the United States imposed penalties upon Warner. Both sides moved for summary judgment.

In that case, the Plaintiff argued that he had no knowledge that the claimed deductions were incorrect. The court found that

there was a material issue of fact with respect to the Plaintiff's fraud and denied summary judgment on that issue.

This case differs in that Bailey's own affidavit states that he knew that during the relevant tax year (1987) the taxpayers (the Pierces) owned forty percent of the video store. Mrs. Pierce also stated in her deposition that she told the Plaintiff that she and her husband owned forty percent in 1987. It was not until 1989 that the Pierces acquired eighty percent ownership. It was in 1992 that Bailey amended the 1987 return and indicated eighty percent ownership. Bailey's affidavit explains that the Pierces told him that in 1987 they owned forty percent, in 1988 sixty percent, and in 1989 to the present, they owned eighty percent. The Plaintiff admits that when he prepared the amended 1987 form he knew that in 1987 the Pierce's owned forty percent, but yet he claimed eighty percent ownership. Bailey cannot, and has not, tried to claim that he did not know that he was amending a return to indicate eighty percent ownership for a tax year when the Pierces owned forty percent. Unlike *Warner*, this Plaintiff cannot claim mistake or mere negligence because his own testimony demonstrates knowledge.

The Southern District of Florida concluded that knowledge of understatement equals fraud—or that a document that understates tax liability is false or fraudulent. The statute speaks of knowledge. Mr. Bailey had knowledge. This Court disagrees with *Warner*, to the extent that it requires proof of fraud and imposes a clear and convincing standard of proof. Rather, this Court agrees with the vast majority of courts who have declined to follow *Warner*, and have held that the proper standard is one of a preponderance of evidence.[3] In any event, in this case, the government would still prevail even under a clear and convincing standard. The Plaintiff's own affidavit provides such proof.

The parties now agree that the amount of the penalty should be $1000 under § 6701(b)(1), rather than $10,000 under § 6701(b)(2). The Plaintiff asserts that because the penalty was imposed pursuant to § 6701(b)(2), rather than § 6701(b)(2), no penalty may be imposed. The Plaintiff is correct, insofar as he points out that the document at issue is a personal return, subject to the penalty amount in § 6701(b)(1). The amended return is not relating to a corporation's tax liability that would trigger the $10,000 penalty of § 6701(b)(2).

It does not follow, however, that the United States may assess no penalty because the amount of penalty initially imposed was wrong. The authority to impose a penalty—any penalty—comes from § 6701(a). It is only the amount that is determined under subsection (b). The United States has remedied the problem by agreeing that the amount should be reduced to $1000.

## CONCLUSION

The Defendant has established every element required by § 6701(a) and the Plaintiff has not adequately challenged the Defendant's evidence that Mr. Bailey aided or assisted in the preparation or presentation of tax related documents, knowing that if used, a tax liability understatement would result. There is no dispute that the Plaintiff aided or assisted in the preparation of the two amended 1040X forms, the amended K–1 and the amended 1120S. As to his knowledge, the Plaintiff has submitted no admissible evidence to counter that submitted by the Defendant. There is no dispute that the Plaintiff knew that the Pierce's owned only forty percent in 1987. He has merely rested on his allegations and has simply denied the evidence of the Defendant. This is insufficient to create a factual issue and to defeat a motion for summary judgment. While the issue of knowledge may sometimes be consid-

---

**3.** *See, e.g., Barr v. United States*, 67 F.3d 469 (2d Cir.1995) (rejecting *Warner's* clear and convincing evidence standard and adopting preponderance standard in aiding and abetting understatement of tax liability); *Mattingly v. United States*, 924 F.2d 785 (8th Cir.1991) (ruling that aiding and assisting penalty is not the same as civil tax fraud which requires clear and convincing evidence and declining to follow *Warner*); *In re Mitchell*, 109 B.R. 434 (Bankr.W.D.Wash.1989), aff'd, 66 A.F.T.R.2d (P–H P 90 5890, 90–2, U.S.Tax Cas. (CCH) P 50,495, 1990 WL 142016 (W.D.Wash.1990)) (preponderance standard is proper and logical because Ninth Circuit decisions apply that standard to § 6700 and § 6702 cases in accordance with § 6703).

ered a fact issue precluding summary judgment, the Plaintiff has not created such a factual issue in this case. The Plaintiff has come forward with nothing to rebut the Defendant's evidence of knowledge. Accordingly, based upon the foregoing it is

ORDERED that Plaintiff's Motion for Summary Judgment filed October 26, 1995 is DENIED and Defendant's Motion for Summary Judgment filed February 5, 1996 is GRANTED; and the penalty is reduced from $10,000 to $1000.

IT IS FURTHER ORDERED that the Defendant's Motion to Extend Discovery Deadline filed February 1, 1996 is DENIED AS MOOT. The Clerk of the Court is directed to enter judgment in favor of the Defendant and to close this case.